Andrew L. **STONE** and M. Jeanne **Stone, Plaintiffs,**

v.

**UNITED STATES of America and District Director of Internal Revenue, Manhattan District, Defendants.**

**No. 74 Civ. 3643.**

United States District Court,
S. D. New York.

Dec. 2, 1975.

**644**

---

Wagman, Cannon & Musoff, P.C., New York City, for plaintiffs; Wallace Musoff, New York City, of counsel.

Paul J. Curran, U. S. Atty., S.D.N.Y., New York City, for defendants; William G. Ballaine, Asst. U. S. Atty., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs, Andrew L. Stone and M. Jeanne Stone, husband and wife, commenced this action against the United States of America and the District Director of Internal Revenue for a judgment (1) enjoining the defendants from enforcing, by lien, levy or otherwise, a jeopardy assessment made against plaintiffs for income deficiencies, interest and penalties totalling $7,108,861.73 for the taxable years 1963 through 1967; (2) directing specific enforcement of an escrow agreement dated July 24, 1970, by causing the release to plaintiff Andrew L. Stone of income from escrow assets which has not been paid to Stone by reason of defendants' enforcement of the jeopardy assessment; and (3) awarding damages in the sum of $10,000 in favor of plaintiff Andrew L. Stone for breach of the escrow agreement.

The matter is now before the court on defendants' motion to dismiss the complaint pursuant to Rules 12(b)(2) and (b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and for failure to state a claim on which relief can be granted.

In 1968 Andrew L. Stone, who was the principal stockholder and chief executive officer of a corporation engaged in the production of rocket launchers pursuant to contracts with the Department of the Navy, was indicted in the United States District Court for the District of Columbia. The thirty-count indictment charged him, the corporation, Francis N. Rosenbaum (its special counsel and a director) and others with conspiracy and substantive crimes to defraud the government through the presentation of false and fictitious invoices and statements and the receipt of kickbacks. Stone pleaded guilty to the conspiracy count and seven substantive counts. Rosenbaum also pleaded guilty to the conspiracy charge, as well as other counts.

In 1969 plaintiff Stone was again indicted with others in the United States District Court for the Eastern District of Missouri and charged with violations of and conspiracy to violate the Munitions Control Act by exporting arms, ammunition and implements of war without government approval and by the use of false statements. He was convicted upon his plea of guilty to the crime of conspiracy.

In 1969 the government commenced two separate civil actions, one in the Eastern District of Missouri and the other in the District of Columbia, against Stone and the corporations of which he was the principal shareholder, based in large measure upon the fraudulent and criminal acts committed by Stone and his co-conspirators. The complaints generally alleged various claims under the False Claims Act[1] and the Anti-Kickback Act[2] for breach of warranty, recoupment of public funds paid by mistake and declaration of a constructive trust. Damages were sought in the sum of over $6,000,000 and double that amount for violation of the False Claims Act.

Thereafter, in an effort to assure that sufficient assets of Stone would be available to satisfy any judgment which the government might recover upon its civil claims and to avoid attachment by it against his property and assets, Stone and the government entered into an escrow agreement. Under its terms, pending the disposition of the civil suits,

1. 31 U.S.C. §§ 231–35.

2. 41 U.S.C. §§ 51–54.

Stone deposited $2,500,000 par value short term securities and the shares of a wholly owned corporation in escrow with the Trustee named in the agreement. The securities constituted some but not all of his assets. The agreement provided that any dividend or interest received by the Trustee upon the securities was to be credited to Stone's account with the Trustee. It is this provision which plaintiffs seek to have specifically enforced, among other relief.

In addition to the two government civil actions, four separate civil actions by individual plaintiffs were commenced in United States district courts against Stone and others associated with him, alleging securities law violations based generally upon the fraudulent conduct which was the subject of the criminal charges. Those six actions were transferred to the District of Columbia for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C., section 1407.[3] In addition to the transferred actions, other civil suits against Stone were commenced in various state courts.

It is against this background that on February 7, 1972 the Internal Revenue Service made the jeopardy assessment against Stone and his wife for income tax deficiencies for the tax years 1963 through 1967. Notice with a schedule detailing the computation of the deficiencies and additions for fraud[4] was duly sent to plaintiffs within sixty days of the making of such assessment.[5] In July 1972 each filed a petition in the United States Tax Court seeking a redetermination of the deficiencies and additions assessed.[6] Plaintiff M. Jeanne Stone in that proceeding contends she is an "innocent spouse" and as such is not liable for any alleged deficiency.[7]

In August 1974, during the pendency of the Tax Court proceeding, which is at issue and undetermined, plaintiffs commenced this action. In their amended complaint they allege five separate claims for relief: (1) that the United States breached the escrow agreement by filing the jeopardy assessment against the plaintiffs, thereby causing the escrow agent to withhold from Andrew Stone the income derived from escrow assets;[8] (2) that the jeopardy assessment was made arbitrarily, in bad faith, and in violation of the Internal Revenue Service's own guidelines in order to bring pressure against Andrew L. Stone, then incarcerated upon the criminal charges, to settle the civil actions brought by the government, rather than to safeguard any revenue that might be due and owing to the government; (3) that the jeopardy assessment was arbitrary and capricious and made in violation of plaintiffs' right against unreasonable seizures under the Fourth Amendment and of their due process rights under the Fifth Amendment; (4) that the computations underlying the assessment were made arbitrarily and in violation of the due process clause of the Fifth Amendment; and (5) that plaintiff M. Jeanne Stone is an innocent spouse who is entitled to be relieved of the tax deficiency assessment. Plaintiffs allege jurisdiction under 28 U.S.C., sections 1331, 1340 and 1346(a)(2).

The essence of plaintiffs' various claims, however phrased, is that the jeopardy assessment was imposed arbitrarily and capriciously and not to collect taxes that were due. The government, in support of its motion to dismiss, contends that this court is without

---

3. *In re Alsco-Harvard Fraud Litigation,* 325 F.Supp. 315 (Jud.Pan.Mult.Lit.1971).

4. *See* 26 U.S.C. § 6653(b).

5. *See* 26 U.S.C. § 6861(b). There is no contention that the notice procedure required under this provision was not complied with by the Service.

6. *See* 26 U.S.C. § 6213(a).

7. *See* 26 U.S.C. § 6013(e).

8. While the amounts withheld are substantially in excess of $10,000, plaintiffs' prayer for relief is limited to $10,000 in light of the limitations of the Tucker Act, 28 U.S.C. § 1346.

jurisdiction since 26 U.S.C., section 7421(a), insofar as pertinent, provides:

". . . [N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

The essential purpose of this anti-injunction provision is to enable the government to assess and collect taxes allegedly due as expeditiously as possible without judicial intervention. Those challenging a deficiency assessment may litigate its legality either by petition to the Tax Court[9] (which, as noted, plaintiffs here have submitted) or, upon payment of the tax and denial of a refund, by a refund action in the federal district court,[10] or by asserting a claim in the Court of Claims.[11]

■ Despite the absolute jurisdictional bar of section 7421(a), the Supreme Court, in *Enochs v. Williams Packing & Navigation Company*,[12] held that a suit for injunctive relief against tax assessment or collection may be maintained where, on the basis of information available to the government at the time of the suit and under the most liberal view of the law and the facts, (1) "it is clear that under no circumstances could the Government ultimately prevail" and (2) "equity jurisdiction otherwise exists" because of irreparable injury and lack of an adequate remedy at law.[13] Unless both conditions are met, the court is without jurisdiction and a suit for preventive injunctive relief must be dismissed.

The Supreme Court, in a series of recent cases,[14] reiterated the stringent force of the anti-injunction standards of *Williams Packing*, which it described as "the capstone to judicial construction of the Act,"[15] by refusing to engraft further exceptions based upon claims of alleged irreparable injury pending resort to alternative remedies and alleged denial of due process by reason thereof—in sum, the court interpreted *Williams Packing* to warrant injunctive relief only upon a showing "that the Service's action is plainly without a legal basis," and that it has "no chance of success on the merits."[16] Thus, plaintiffs have a heavy burden to sustain their claim for judicial intervention with respect to the challenged jeopardy assessment.

To establish that they come within the rigid exceptions of *Williams Packing*, the plaintiffs in substance contend that the jeopardy assessment was made arbitrarily and capriciously by the Internal Revenue Service for punitive purposes and in the guise of a tax which it knew was not due; that the same items of income attributed to plaintiff Andrew L. Stone were attributed to his co-conspirator Francis M. Rosenbaum; that the purpose of the jeopardy assessment was not to collect or preserve the revenue, but to pressure plaintiffs into settling the civil actions, in violation of the escrow agreement; and that the assessment was imposed to satisfy the press, which had been questioning why plaintiff Andrew L. Stone, then serving a prison term upon his convictions, was permitted to receive the income from the escrow assets. Plaintiffs further charge that as the net result of this alleged con-

9.  26 U.S.C. §§ 6212, 6213.

10.  26 U.S.C. § 7422; 28 U.S.C. § 1346.

11.  28 U.S.C. § 1491.

12.  370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292. (1961).

13.  370 U.S. at 7, 82 S.Ct. at 1129.

14.  *United States v. American Friends Serv. Comm*, 419 U.S. 7, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974); *Bob Jones Univ. v. Simon*, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974); *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974).

15.  *Bob Jones*, 416 U.S. at 742, 94 S.Ct. at 2048.

16.  *Bob Jones*, 416 U.S. at 745, 94 S.Ct. at 2050.

duct by the Service they have been denuded of their assets and unconstitutionally deprived of their property and the means to resist the Service's deficiency assessment, or to defend the numerous other litigations in which Stone is named as a defendant. Accordingly they claim they have satisfied both standards of the *Williams Packing* jurisdictional test.

■ Plaintiffs' conclusory allegations and general charges of "arbitrary and capricious" conduct attributed to the Service must be tested against the *Williams Packing* requirement that it must be clear that "under no circumstances could the Government ultimately prevail." While plaintiffs contend that the assessment was inspired by base motives on the part of the Service, unrelated to taxes that were due, the deficiency determination was not drawn out of thin air. Both the criminal and civil damage actions furnish a substantial foundation to support the claim for additional taxes beyond those reported by plaintiffs in their tax returns for the years in question. The criminal charges involved inflated or fictitious invoices, false purchase orders for component parts of rocket launchers, fictitious service kickbacks, dummy corporations and the use of foreign names to conceal the deposit in Swiss bank accounts of funds fraudulently obtained. The government's contention is that the amounts of which it was defrauded were diverted by Andrew Stone to his personal use and constituted income attributable to him by way of constructive dividends, which, together with items that were disallowed in the tax returns, reflected additional income of $6,835,790 upon which taxes were due. According to the District of Columbia indictment, the total of the rocket launcher contracts awarded to the corporation headed by Stone and of which he was the principal shareholder exceeded $47,000,000. The amounts diverted thereon by the fraudulent practices in the period from July 1963 to March 1, 1966, were alleged to have exceeded $4,000,000, which does not include interest and tax penalties. The amount of the tax deficiencies as claimed by the Internal Revenue Service is $4,739,241.-14, and the addition for fraud is $2,369,-620.59, a total in excess of $7,000,000.

While this court is not called upon to pass upon the merits of the claim for additional taxes due or plaintiffs' resistance thereto, clearly it cannot be contended that the deficiency assessments are without substance or were not made in good faith.[17] In assessing the additional taxes, the Service made a computation for each year specifying each item of additional income and unallowable deductions upon which it claimed deficiency taxes were due.

■ The tax deficiency assessment is entirely independent of the government's claims in the civil actions against Stone, wherein the government seeks to recover in excess of $6,000,000. The covenant in the escrow agreement related solely to that action and was entered into by Stone to avoid attachment of his assets and property in that action. While the agreement provides that the dividend income of the escrowed securities is to be credited to plaintiff Andrew L. Stone

17. *Compare Aguilar v. United States*, 501 F. 2d 127 (5th Cir. 1974) ; *Willits v. Richardson*, 497 F.2d 240 (5th Cir. 1974) ; *Lucia v. United States*, 474 F.2d 565, 573–75 (5th Cir. 1973) ; *Pizzarello v. United States*, 408 F.2d 579 (2d Cir.), *cert. denied*, 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969) ; *Rinieri v. Scanlon*, 254 F.Supp. 469 (S.D.N. Y.1966), *with Iannelli v. Long*, 487 F.2d 317 (3d Cir.), *cert. denied*, 414 U.S. 1040, 94 S. Ct. 541, 38 L.Ed.2d 330 (1973) ; *Westgate-California Corp. v. United States*, 496 F.2d 839 (9th Cir. 1974) ; *Cole v. Cardoza*, 441 F.2d 1337 (6th Cir. 1971) ; *Collins v. Daly*, 437 F.2d 736 (7th Cir. 1971) ; *Williams v. Wiseman*, 333 F.2d 810 (10th Cir. 1964) ; *Vuin v. Burton*, 327 F.2d 967 (6th Cir. 1964) ; *Botta v. Scanlon*, 314 F.2d 392 (2d Cir. 1963) ; *Hamilton v. United States*, 309 F.Supp. 468, 472–73 (S.D.N.Y.1969), *aff'd*, 429 F.2d 427 (2d Cir. 1970), *cert. denied*, 401 U.S. 913, 91 S.Ct. 881, 27 L.Ed.2d 812 (1971).

and that the Civil Division of the United States Department of Justice will not institute attachment proceedings against his property and assets and will use its best efforts to dissuade any other agency of the United States from proceeding by way of attachment or other lien against his property, this, of course, did not immunize Stone from tax liability or foreclose the Internal Revenue Service from taking appropriate steps to assess a deficiency and to make a jeopardy assessment to reach his assets, including the income from the escrowed securities. The deficiency tax claims and the jeopardy remedies available to the Internal Revenue Service were entirely separate from the claims and remedies which the Justice Department was asserting under the False Claims and Anti-Kickback Acts.

Plaintiffs also urge that the assessment was illegal because the District Director did not entertain a good faith belief that collection of the taxes would be jeopardized by delay, but rather acted to coerce plaintiffs into a settlement of the civil actions or to respond to a clamorous public press. A good faith belief that tax collection is in jeopardy, plaintiffs argue, is required under section 6861(a) of the Internal Revenue Code, and in its absence the assessment is illegal. This claim, which plaintiffs contend is not subject to the rigid limitations of the *Williams Packing* doctrine because of express exceptions in sections 7421(a) and 6213(a),[18] is, without passing upon their contention, also without merit. The District Director had the right, and indeed the duty, to protect the public fisc against delay in the payment of the alleged additional taxes, collection of which might well have been jeopardized by the prospect of judgments in favor of third parties in the various pending civil actions against Stone. The broad discretion vested in the District Director to make a jeopardy assessment where he believes that the ultimate collection of the tax will be jeopardized by delay must be viewed against plaintiff Andrew L. Stone's entire course of fraudulent conduct with respect to the government contracts over an extended period and his use of Swiss bank accounts to conceal his derelictions. So viewed, it cannot be said that the assessment is wholly without foundation in fact. To contend, under the facts here presented, that the District Director's concern for the collection of a potential deficiency of $7,000,000 was feigned borders on the fatuous. Even assuming that the jeopardy assessments were made, as plaintiffs contend, to coerce them into a settlement of the civil actions or in response to a clamorous public press, the assessments would still rest on an independent solid basis.[19] In any case, the clear weight of the judicial authority is to the effect that the District

---

18. Section 7421(a) bars suits for the purpose of restraining the assessment or collection of any tax "[e]xcept as provided in sectio[n] 6213(a) . . . ." Section 6213(a) forbids any assessment upon United States taxpayers for a 90-day period following the mailing of a deficiency notice, and, if the taxpayer files a petition for redetermination with the Tax Court within those 90 days, the prohibition upon assessments continues until a final decision of the Tax Court. If the Service does attempt to assess or levy upon a tax deficiency within the prohibited period the protection of the Anti-Injunction Act is withdrawn; the last sentence of section 6213(a) provides that in such event, "[n]otwithstanding the provisions of section 7421(a)," the assessment, levy, or other proceeding "may be enjoined by a proceeding in the proper court." An express exception is made, however, for jeopardy assessments under section 6861. Petitioners here, by arguing that the Service did not entertain a good faith belief that the collection of additional taxes was in jeopardy, take the position that the assessments were not made in compliance with section 6861(a) and that section 6213(a) therefore permits this court to issue an injunction.

19. *Cf. Bob Jones Univ. v. Simon*, 416 U.S. 725, 740, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974); *Iannelli v. Long*, 487 F.2d 317, 318 (3d Cir.), *cert. denied*, 414 U.S. 1040, 94 S. Ct. 541, 38 L.Ed.2d 330 (1973).

Director's determination of a jeopardy is not subject to judicial review.[20]

The plaintiffs' claim to injunctive jurisdiction also founders on the issue of alleged irreparable injury based upon their contention that the jeopardy assessment "stripped them of their liquid assets and [they] are unable to defend themselves against an onslaught of litigation by the United States involving millions of dollars and consequently face complete financial ruin." The short answer is that the Supreme Court explicitly has held that the Anti-Injunction Act may not be evaded "merely because collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise." [21] Plaintiffs' attempt to hold on to jurisdiction by bootstrapping this claim to one of denial of due process of law under the Fifth Amendment and violation of their rights against unlawful seizure is equally unavailing. The Supreme Court has stated that "decisions of this Court make it unmistakably clear that the constitutional nature of a taxpayer's claim, as distinct from its probability of success, is of no consequence under the Anti-Injunction Act." [22] A similar due process of law argument, based upon irreparable injury pending resort to alternative and allegedly inadequate judicial procedures for review was "dismissed out of hand . . . nearly 60 years ago" by the Supreme Court, which recently found "such arguments no more compelling now than then."[23]

■ So, too, the fact that the wife alleges she is an "innocent spouse" affords no jurisdictional basis for her claim.[24] She filed a joint tax return with her husband and is jointly and severally liable for any tax due.[25] Accordingly, she, too, is barred from maintaining this suit under section 7421(a). The fact that she may ultimately prevail upon her contention creates no exception thereunder.

■ Plaintiffs advance a number of other contentions which require no more than mention and may readily be disposed of. As to the claim that the Service attributed the same income to Francis Rosenbaum, Stone's co-conspirator, it is settled that, pending collection of the taxes alleged to be due, the Service is permitted to assert inconsistent positions and to assess deficiencies against more than one person for the same tax liability if there is an accepted legal basis for each assertion.[26]

■ Finally, plaintiffs contend that the jeopardy assessments were made in violation of the Internal Revenue Service's self-promulgated guidelines.[27]

20. *See, e. g., Durovic v. Commissioner,* 487 F.2d 36, 40 (7th Cir. 1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974); *Transport Mfg. & Equip. Co. v. Trainor,* 382 F.2d 793, 799 (8th Cir. 1967); *Lloyd v. Patterson,* 242 F.2d 742, 744 (5th Cir. 1957). *But see Sherman v. Nash,* 488 F.2d 1081, 1084 (3d Cir. 1973).

21. *Enochs v. Williams Packing Co.,* 370 U.S. 1, 6, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). *Accord, Bob Jones Univ. v. Simon,* 416 U.S. 725, 742, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974).

22. *Alexander v. "Americans United" Inc.,* 416 U.S. 752, 759, 94 S.Ct. 2053, 2058, 40 L.Ed. 2d 518 (1964).

23. *Bob Jones Univ. v. Simon,* 416 U.S. 725, 746, 94 S.Ct. 2038, 2050, 40 L.Ed.2d 496 (1974). *See Dodge v. Osborn,* 240 U.S. 118, 122, 36 S.Ct. 275, 60 L.Ed. 557 (1916).

24. *See Kirtley v. Bickerstaff,* 488 F.2d 768, 770 (10th Cir. 1973), *cert. denied,* 419 U.S. 828, 95 S.Ct. 47, 42 L.Ed.2d 52 (1974).

25. 26 U.S.C. § 6013(d)(3).

26. *Wiles v. Commissioner,* 499 F.2d 255, 259 (10th Cir.), *cert. denied,* 419 U.S. 966, 95 S.Ct. 310, 42 L.Ed.2d 270 (1974); *Estate of Goodall v. Commissioner,* 391 F.2d 775, 782–84 (8th Cir.), *cert. denied,* 393 U.S. 829, 89 S.Ct. 96, 21 L.Ed.2d 100 (1968).

27. Internal Revenue Manual § 5214.21 provides for a jeopardy assessment where, *inter alia*:
"(a) The taxpayer is or appears to be designing quickly to place his property beyond the reach of the Government either by removing it from the United States, or by concealing it, or by transferring it to other persons, or by dissipating it.

Even were it to be accepted that the District Director did not follow the Service's guidelines, this would not vest the district court with jurisdiction to issue an injunction, contrary to the specific prohibition contained in the Anti-Injunction Act, which manifests a strong congressional policy against judicial intervention.

The complaint is dismissed for lack of jurisdiction. The dismissal also applies to the claim alleged to be for breach of contract, since the prayer for specific performance of the agreement affects the assessment or collection of taxes. However, the dismissal of that claim is without prejudice to the commencement by plaintiffs of a new action for breach of contract against the government (not against the District Director) in the sum of $10,000, or alternatively, with leave to plaintiffs, if so advised, to serve an amended complaint against the government in this action limited to a claim solely for breach of the alleged agreement in the sum of $10,000.

"(b) The taxpayer is, or appears to be designing quickly to depart from the United States, or to conceal himself.

"(c) The taxpayer's financial solvency is or appears to be imperiled. (This does not include cases where the taxpayer becomes insolvent by virtue of the accrual of the proposed assessment of tax, penalty and interest.)"