**Stanley M. ROSENBLUM et al., Appellants,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 76–1241.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1976.

Decided Feb. 2, 1977.

Merle L. Silverstein, Clayton, Mo., for appellants; Stanley M. Rosenblum, of Rosenblum, Goldenhersh, Silverstein & Zafft, Clayton, Mo., on brief.

Michael J. Roach, Atty., Tax Div., Dept. of Justice, Washington, D.C., for appellee; Scott P. Crampton, Gilbert E. Andrews and Carleton D. Powell, Attys., Washington, D.C., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, HEANEY and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This is an action brought in the United States District Court for the Eastern District of Missouri against the United States pursuant to 26 U.S.C. § 7426(a) by the members of the Clayton, Missouri law firm of Rosenblum, Goldenhersh, Silverstein & Zafft (hereinafter Rosenblum), and by Edward Yawitz and Florence Yawitz, his wife, and Clardel Drug Company, a corporation (hereinafter taxpayers). The purpose of the suit is to recover from the government approximately $42,000.00 that was paid to Rosenblum by taxpayers as an attorney's fee and to defray expenses in connection with Rosenblum's agreement to represent the taxpayers in litigation pending in the Tax Court of the United States; prior to the payment of the money to Rosenblum, the Commissioner of Internal Revenue had made a jeopardy assessment of income taxes against the taxpayers and had filed notices of tax liens; after the payment had been made, the Internal Revenue Service levied on all of the assets of the taxpayers and also levied upon the moneys paid to Rosenblum. A demand on the IRS for release of the money was refused, and this action was instituted. Subject matter jurisdiction is predicated upon 28 U.S.C. §§ 1346(a)(1) and 1346(e).[1]

The theory of the plaintiffs is that the "totality" of the seizure by the IRS, including the seizure of the money paid to Rosenblum, has deprived the taxpayers of their alleged constitutional right to be rep-

---

1. The complaint also makes reference to 28 U.S.C. § 2410; that section does not appear to us to be pertinent.

resented by competent tax counsel in the litigation that taxpayers have pending in the Tax Court, which litigation plaintiffs describe as being complicated and technical.[2]

The suit was filed in August, 1975. The government filed a motion to dismiss the complaint and a later motion for summary judgment alleging that the district court lacked subject matter jurisdiction, and that the complaint failed to state a claim upon which relief could be granted.

On February 23, 1976 the district court[3] filed a memorandum opinion and entered a judgment dismissing the complaint without prejudice. The view of the district court was that Rosenblum had no protectable interest in the moneys that were seized, and that the constitutional claim of the taxpayers would have to be raised in the Tax Court and could not be adjudicated in the district court. Disagreeing with the district court in both respects, plaintiffs filed a timely notice of appeal.

The facts of the case are mostly undisputed.

Edward Yawitz and Florence Yawitz are husband and wife, and they reside in St. Louis County, Missouri. It is inferable that they are interested in and probably control the third taxpayer, Clardel Drug Company.

It seems clear that for a number of years prior to September, 1974 the taxpayers had been in controversy with the IRS with respect to their income tax liabilities, including civil fraud penalties and that they had cases pending in the Tax Court. Apparently, there were six of those cases, three instituted by the individual taxpayers and three instituted by the corporate taxpayer. Judging from Tax Court docket numbers appearing in the complaint, it may be inferred that the Tax Court proceedings were instituted in 1972, 1973 and 1974.

On September 9, 1974 Mr. Yawitz entered a plea of guilty in federal court to a charge of fraudulent evasion of federal income taxes due with respect to calendar year 1968. Immediately thereafter the Commissioner made jeopardy assessments against the taxpayers covering all asserted income tax liabilities on their part. Demand for payment was made on the taxpayers with which demand there was no compliance, and on September 16, 1974 the IRS filed notices of tax liens.

In the meantime, on September 11, 1974, taxpayers employed Rosenblum to represent them in the litigation pending in the Tax Court. The individual taxpayers agreed to pay Rosenblum a fee of $20,000.00 and to advance expenses of litigation amounting to $2486.05. The corporate taxpayer agreed to pay a fee of $19,625.00. Those sums were in fact paid over to Rosenblum not later than October 8, 1974, and were deposited in three separate special bank accounts in a Clayton, Missouri bank. When the payments were made, Rosenblum was on constructive notice of the government's tax liens, and it is quite possible that Rosenblum had actual knowledge that the liens had been perfected.

Between October 8 and November 8, 1974 Rosenblum notified the IRS that it had received the payments from the taxpayers.

On November 8, 1974 the IRS served a notice of levy on Rosenblum calling upon it to turn over to the IRS the moneys that it had received from the taxpayers. On November 13, 1974 Rosenblum complied with the demand and surrendered the money. On November 25, 1974 Rosenblum requested the IRS by letter to return the moneys to the law firm; that request was denied by letter on February 20, 1975. This action was commenced on August 18 of that year.

The complaint is in two counts. The first count sets out the claim of Rosenblum and of the individual taxpayers for a return of the $22,486.05 paid by those taxpayers to Rosenblum. The second count sets out the

2. Plaintiffs refer to both the fifth and sixth amendments to the Constitution of the United States. We call attention to the fact that the sixth amendment is limited in application to criminal prosecutions.

3. The Honorable John K. Regan, United States District Judge.

claim of Rosenblum and the corporate taxpayer for the return of the $19,625.00 paid to Rosenblum by that taxpayer. Aside from differences in parties and amounts, the two counts are essentially identical.

Count I of the complaint alleges[4] that the cases of the individual taxpayers in the Tax Court are complicated and are based on sophisticated theories of law and fact and that the individual taxpayers are required to refute allegations of fraud, to establish the status of Mrs. Yawitz as an "innocent spouse," and to sustain the burden of proof on the non-fraud issues in the cases which involve substantial amounts of money.[5] It is said that in order to properly present the cases the taxpayers require the assistance of competent, expert and experienced tax counsel who will be required to work on the cases for many hours, and that at the present time the IRS has requested pretrial and administrative conferences at which the taxpayers will require vigorous and skilled representation.

It is further alleged that the taxpayers will not be able to obtain competent counsel unless they are able to compensate such counsel; that the taxpayers believe that Rosenblum is competent to represent them properly and has requested it to do so; that Rosenblum is willing to represent the taxpayers "but is unwilling to do so without fair compensation."

And Paragraph 13 of Count I alleges:

(13) That unless the aforesaid sum of Twenty-Two Thousand Four Hundred Eighty-Six Dollars and Five Cents ($22,-486.05) is released by the Internal Revenue Service, plaintiffs Yawitz will be unable to retain competent counsel, and to pay said necessary costs and expenses,

and will suffer adversely therefrom, and will be deprived of their property without due process of law in contravention of the Fifth and Sixth Amendments to the Constitution of the United States. Plaintiffs Yawitz are denied due process when the defendant United States (respondent in said pending civil tax cases) is permitted to seize the very money which plaintiffs Yawitz used to secure counsel to defend their property interests. The defendant has heretofore levied and seized upon the money and property which plaintiffs Yawitz paid to retain said Rosenblum and for said necessary expenses to protect said property interests as aforesaid; the result of said levy and seizure is that plaintiffs Yawitz are totally and effectively denied the opportunity and right to be represented by competent and retained counsel and denied the opportunity for an adequate, full, adversary and fair hearing, all contrary to the aforesaid amendments to the Constitution of the United States.

The government does not deny the factual allegations that have been mentioned, and for present purposes we will accept them as true. The government, of course, does not admit the validity of the conclusions of law that are alleged in the two counts of the complaint. And we are not required to accept those conclusions. Specifically, the government does not admit, nor do we necessarily accept, the validity of plaintiffs' allegations that the seizure of the money was wrongful and that unless the money is returned to Rosenblum the taxpayers will be denied due process of law in connection with the proceedings in the Tax Court.[6]

---

4. Comparable allegations appear in Count II.

5. The district court stated that the amounts of the assessments made by the Commissioner total several hundreds of thousands of dollars.

6. We note at this point that the plaintiffs do not contend that the federal statutes which authorize the government to collect taxes summarily by means of jeopardy assessments and levies in advance of judicial determinations of tax liabilities are unconstitutional. Such a con-

tention would be untenable today. Since *Phillips v. Commissioner of Internal Revenue,* 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931), was decided it has been established that summary procedures for the collection of internal revenue taxes are not violative of the due process clause of the fifth amendment so long as the taxpayer has a post-collection judicial remedy whereby he may obtain an adjudication of his tax liability.

## I

The question of whether the IRS may, agreeably with the due process clause, seize all of a taxpayer's money and property on the basis of a jeopardy assessment and thereby render the taxpayer financially unable to adjudicate his tax liability in the Tax Court or otherwise is a serious one. And it gave trouble to the Tax Court in *Human Engineering Institute v. Commissioner of Internal Revenue*, 61 T.C. 61, 64–68 (1973), the opinion in which case was referred to by the district court in this case. While the Tax Court raised the question and expressed concern about it, the court found it unnecessary to decide the question because the taxpayers had in fact been able to raise funds to finance their Tax Court litigation.

While the constitutional question just mentioned is serious, the precise question before us at the moment is whether the plaintiffs were entitled to litigate the constitutional issue in the district court within the framework of this case.

We agree with the district court that plaintiffs were not so entitled.

## II

■ United States district courts are courts of limited jurisdiction, and it is necessary to look at the pertinent jurisdictional statutes.

Under 28 U.S.C. § 1346(a)(1) the district courts have jurisdiction of suits brought against the United States to recover internal revenue taxes and penalties erroneously or illegally assessed or collected. And § 1346(e) gives the district court specific jurisdiction with respect to suits brought under 26 U.S.C. § 7426, which is the statute invoked by plaintiffs in this case.

However, 26 U.S.C. § 7421(a), which is often called the anti-injunction statute, prohibits, with certain exceptions including suits brought under § 7426(a)(1) and (b), suits by taxpayers to restrain the assessment or collection of any tax imposed by the internal revenue laws. The constitu-

tionality of that section is established and is not questioned here.

Section 7426(a)(1) is as follows:

(a) *Actions permitted.—*

(1) *Wrongful levy.—*If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary or his delegate.

Section 7426(b), insofar as here pertinent, provides:

(b) *Adjudication.—*The district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances:

(1) *Injunction.—*If a levy or sale would irreparably injure rights in property which the court determines to be superior to rights of the United States in such property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale.

(2) *Recovery of property.—*If the court determines that such property has been wrongfully levied upon, the court may—

(A) order the return of specific property if the United States is in possession of such property;

(B) grant a judgment for the amount of money levied upon; or

(C) grant a judgment for an amount not exceeding the amount received by the United States from the sale of such property.

We think that the complaint in the case may fairly be construed as actually setting out two separate and distinct claims for relief.

One of those claims is that of Rosenblum in its own right. It contends that the money in question belonged to it and that it was wrongfully seized by the IRS. The only

jurisdictional basis for that claim is § 7426(a)(1).

The other claim is the personal claim of the taxpayers which amounts to an assertion that they have a personal right to have the seized moneys returned to Rosenblum to compensate that law firm for representing plaintiffs in the Tax Court. That claim obviously cannot be maintained under § 7426(a)(1) because the remedy provided by that statute is not available to taxpayers. And prosecution of the claim is barred by § 7421(a) unless the taxpayers fall within a narrow exception to the applicability of that section which exception we will mention in due course.

### III

In order for Rosenblum to prevail on its own § 7426 claim it must appear that it claims an interest in the money, which it does, and that the seizure of the money by the government was "wrongful."

■ While § 7421, the anti-injunction statute, is an old statute, what is now § 7426(a)(1) and (b) came into the Internal Revenue Code as part of the Federal Tax Lien Act of 1966. And the purpose of the statute was to give a judicial remedy to a person whose property is wrongfully seized to satisfy the tax liability of someone else. Senate Report No. 1708, 89th Congress, 2d Session, 1966, U. S. Code Congressional & Administrative News, p. 3751; *Rosenbaum v. United States*, 346 F.Supp. 872, 873 (D.Md.1972); *Sylk v. United States*, 331 F.Supp. 661, 664 (E.D.Pa.1971). As a matter of fact, the statute appears to be in effect a codification of the decisional rule laid down in earlier cases that a suit to enjoin a wrongful taking of the property of one person to satisfy another's tax obligation was not barred by the anti-injunction statute itself. *See, e. g., Moore v. Hanson*, 325 F.2d 784 (5th Cir. 1964); *Holland v. Nix*, 214 F.2d 317 (5th Cir. 1954); *Tomlinson v. Smith*, 128 F.2d 808 (7th Cir. 1942);

*Rothensies v. Ullman*, 110 F.2d 590 (3d Cir. 1940).

It is clear that as between the taxpayers and Rosenblum legal title to the money passed to the latter when it was paid over by the former. We are satisfied, however, that Rosenblum's title to the money was subject to the prior tax lien of the government, and that Rosenblum is entitled to a return of the money only on the theory that the seizure was wrongful.

Rosenblum's claim of a "wrongful" seizure is based on the proposition that the seizure deprived the taxpayers of their alleged constitutional right to be represented by competent counsel in the Tax Court proceedings.

■ ■ We do not think that the Rosenblum claim can be sustained on that theory. In our view the term "wrongfully levied upon" used in § 7426(a)(1) means seized wrongfully in relation to the third person who is bringing the suit and not merely wrongful in relation to a taxpayer who may suffer from the collateral effects of the seizure. In other words, the "wrong" contemplated by the statute is that suffered by the third person when his property is taken to satisfy the tax obligation of another, and not some "wrong" that the taxpayer may suffer because the government has seized property which the taxpayer has transferred to the third person.

We consider inapposite the case of *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), cited by plaintiffs. That case holds that a person charged with aiding and abetting the violation of a criminal statute may rely as a defense on the fact that the statute is unconstitutional as to the principals involved. It does not follow that a firm of tax lawyers may use an alleged deprivation of a constitutional right of its taxpayer clients as a sword for the purpose of maintaining a suit against the government which the taxpayers themselves are lawfully precluded from bringing.[7]

7. While it does not appear that the government in resisting the Rosenblum claim makes any argument based on § 7426(c), we call attention to the fact that the subsection just cited provides that for purposes of a suit under § 7426 the underlying assessment of the Commission-

## IV

It has been observed that taxpayers themselves cannot maintain this action unless they fall within an exception to § 7421(a) other than the exceptions mentioned in that section.

■ The unmentioned exception relied on by the taxpayers here is that § 7421(a) is not applicable where the Commissioner's assessment is so baseless that the Commissioner has no chance of prevailing ultimately in the controversy and where to permit the assessment and levy to stand in advance of final adjudication of the taxpayer's liability would subject the taxpayer to irreparable harm. That exception was recognized in *Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932), and in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). It was recognized most recently in *Commissioner of Internal Revenue v. Shapiro*, 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976), a case decided a few days after the district court decided the instant case and on which decision plaintiffs lay a good deal of stress.

■ No useful purpose would be served by outlining the rather unusual facts that were presented in the *Shapiro* case or undertaking to compare them in detail with the facts in the instant case. Suffice it to say that in our opinion this case does not present the urgent situation that was presented in *Shapiro*, and it does not appear to us that to leave the levy in question undisturbed would work such irreparable harm to the taxpayers as to call for the exercise of the equity jurisdiction of the court to grant relief despite the prohibition of § 7421(a).

The civil tax controversy between the taxpayers and the government is before the Tax Court, and the taxpayers are free to contend before that court that it is a violation of due process for the government to impose ruinous assessments upon them while at the same time stripping them of the financial means necessary to enable them to litigate the assessments effectively. As has been seen, the Tax Court has been concerned with the problem presented by a case like this, and we will not presume that the Tax Court is either unable or unwilling to grant the taxpayers any appropriate relief to which they may be entitled, or that the Tax Court will not afford the taxpayers a fair and adequate hearing in connection with the proceedings in that court. It should be kept in mind that assuming arguendo that the taxpayers have a constitutional right to be represented by competent counsel in connection with the Tax Court proceedings, it does not follow that they have a constitutional right to be represented by a particular law firm for a particular fee agreed upon in advance.

Apart from the question of irreparable harm, there is the question of whether the assessments of the Commissioner are so baseless that he has no chance of prevailing in the Tax Court. We think it highly doubtful that that question could be answered favorably to the taxpayers, particularly in view of the plea of guilty entered by Mr. Yawitz to a charge of criminal tax evasion.

In conclusion, we will repeat and emphasize that the taxpayers are free to advance their due process claim in the Tax Court. The government so concedes. If that court fails to give the taxpayers relief with respect to their financial difficulties, and if the ultimate decision of the Tax Court is adverse to the taxpayers, that decision will be subject to review here, and we can then consider whether in the proceedings before the Tax Court the taxpayers were denied due process of law.

The judgment of the district court is affirmed.

---

er is conclusively presumed to be valid. And if that conclusive presumption is indulged with respect to the statutory claim of Rosenblum, then the taxpayers' claims in the Tax Court are without merit, and they stand in no need of representation in that court.