SAMUEL SHAPIRO, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

SAMUEL SHAPIRO AND BELLA SHAPIRO, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 178–74, 6489–76.    Filed November 26, 1979.

*Nathan Lewin,* for the petitioner.
*St. Clair Reeves,* for the respondent.

## OPINION

TANNENWALD, *Judge:* Respondent has asserted deficiencies in petitioners' income taxes as follows:

| Docket No. | Year | Deficiency of tax | Additions to tax | | |
|---|---|---|---|---|---|
| | | | Delinquency (Sec. 6651(a))[1] | Negligence (Sec. 6653(a)) | Underestimation of tax (Sec. 6654(a)) |
| 178–74 | 1970 | $5,137.89 | $1,284.47 | $256.90 | $164.42 |
| | 1971 | 79,368.50 | --- | 3,968.43 | --- |

| Docket No. | Year | Deficiency of tax | Addition to tax—fraud (Sec. 6653(b)) | Liability of Bella Shapiro limited to deficiency of tax |
|---|---|---|---|---|
| 6489–76 | 1972 | $22,562.63 | $11,281.31 | $22,562.63 |
| | 1973 | 136,578.10 | 68,289.05 | 136,578.10 |

Respondent also, on December 6, 1973, issued a jeopardy assessment and seized some $35,000 of assets in respect of the tax liabilities asserted in docket No. 178–74.

With minor exceptions, the asserted deficiencies are based upon income alleged to have been derived from dealings in narcotics by Samuel Shapiro and reflect projections of such income based upon alleged specific transactions.[2]

On September 28, 1979, petitioners filed a motion for the release of $15,000 from the lien created as the result of the

---

[1]All statutory references, unless otherwise indicated, are to the Internal Revenue Code of 1954, as amended.

[2]There has been extensive ancillary litigation with respect to matters related to those involved in the above-docketed cases. *Commissioner v. Shapiro,* 424 U.S. 614 (1976); *Shapiro v. Secretary of State,* an unreported case (D. D.C. 1976, 38 AFTR 2d 76–5453, 76–2 USTC par. 9507), and subsequent hearing held on July 6, 1976, in that action. Throughout the proceedings herein and in these cases, petitioners have been represented by counsel.

jeopardy assessment in order to enable petitioner to pay attorneys' fees and costs in connection with the above-docketed cases. A hearing was held in respect of said motion on October 24, 1979, at which petitioner Samuel Shapiro testified as to the financial position of himself and his wife, who is the copetitioner in docket No. 6489–76.

Although the record as to petitioner's financial position is not crystal clear, at least as far as concerns the possible availability, for the payment of litigation costs, including counsel fees, of assets not subject to the jeopardy assessment during earlier periods of the pendency of these cases, we are satisfied and we find that, at the present time, neither of the petitioners has sufficient assets or sources of income or funds from which to pay such litigation costs.

The issue of the release of funds, which are the subject of a jeopardy assessment, to pay litigation costs of a taxpayer who has no other sources for the payment of such costs is a difficult one. See *Human Engineering Institute v. Commissioner*, 61 T.C. 61, 66–68 (1973). On the one hand, there is no question that, as able counsel for petitioners has so forcefully argued, the unavailability of funds obviously has a direct and adverse impact upon the ability of a taxpayer to be provided with the effective assistance of counsel. That there is an element of unfairness involved cannot be denied, particularly where, as is the case herein, such funds would in all likelihood have been available but for the action of respondent in making the jeopardy assessment.

On the other hand, the courts have recognized the barrier of the Anti-Injunction Act (sec. 7421(a))[3] and have held that in order for a taxpayer to avoid the impact of that act, where a jeopardy assessment is involved, he is required to show that (a) he will suffer irreparable injury and (b) under no circumstances could the Government ultimately prevail. See *Commissioner v. Shapiro*, 424 U.S. 614, 623 (1976); *Enochs v. Williams Packing Co.*, 370 U.S. 1, 7 (1962). The underlying purpose of such a restrictive view is to assure the Government of its ability to collect revenue promptly. See *Enochs v. Williams Packing Co.*,

---

[3]That section provides:

SEC. 7421(a). TAX.—Except as provided in sections 6212(a) and (c), 6213(a), 6672(b), 6694(c), 7426(a) and (b)(1), and 7429(b), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

*supra.* To a certain extent, that restrictive view has been statutorily relaxed by the enactment of section 7429 in 1976 permitting review of a jeopardy assessment by United States District Courts to determine whether it is "reasonable under the circumstances." See section 7429(b)(2)(A).[4] In this connection, we note that there is not the slightest suggestion in the legislative history of section 7429 that the review of jeopardy assessments provided for therein should include a power to release funds to pay litigation costs and it is obvious that the statute itself does not so provide. See H. Rept. 94–658, pp. 299–304 (1975), 1976–3 C.B. (Vol. 2) 695, 991–996; S. Rept. 94–938, pp. 359–367 (1976), 1976–3 C.B. (Vol. 3) 49, 397–405. Moreover, we think it of some significance that, when Congress recently provided for the allowance of attorneys' fees as part of litigation costs in connection with suits by the United States Government to enforce the provisions of the Internal Revenue Code (Pub. L. 94–559, 90 Stat. 2641, amending 42 U.S.C. sec. 1988; see also *Key Buick Co. v. Commissioner,* 68 T.C. 178 (1977), on appeal (5th Cir., Aug. 15, 1977)), it limited such allowance to the "prevailing party," which quite obviously postpones the determination until the conclusion of the litigation.

Where the courts have been faced with the problem, they have uniformly refused, albeit sometimes reluctantly, to sanction the release of funds for the purpose of paying litigation costs, including counsel fees, on the ground that the only basis for a constitutional claim on the part of the taxpayer, whose assets have been seized, is the guaranty of a fair trial under the due process clause of the Constitution—a determination which they have held can only be made post trial. See *Avco Delta Corp. Canada Ltd. v. United States,* 540 F.2d 258 (7th Cir. 1976) and 484 F.2d 692 (7th Cir. 1973); *United States v. Marshall,* 526 F.2d 1349 (9th Cir. 1975); *United States v. Bello,* 470 F. Supp. 723 (S.D. Cal. 1979); *Stone v. United States,* 405 F. Supp. 642 (S.D. N.Y 1975), affd. without published opinion 538 F.2d 314 (2d Cir. 1976); see *Human Engineering Institute v. Commissioner, supra,* and cases cited and discussed therein (61 T.C. at 67). See also *Rosenblum v. United States,* 549 F.2d 1140 (8th Cir. 1977). In reaching their conclusions, the courts have frequently observed

---

[4]That section is not applicable herein, not only because this Court is not given jurisdiction over such actions, but also because it was made applicable only where notice and demand for the payment of the tax occur after Feb. 28, 1977.

that, in any event, there is no constitutional right to obtain funds to pay for counsel of one's own choosing. See *United States v. Marshall, supra* at 1355; *United States v. Bello, supra* at 725; *Human Engineering Institute v. Commissioner, supra* at 67. Nor have the courts found any basis for applying a different approach where a criminal prosecution was involved. See *United States v. Marshall, supra; United States v. Brodson*, 241 F.2d 107 (7th Cir. 1957); *United States v. Bello, supra.* Under these circumstances, we find unpersuasive petitioners' attempt to distinguish the decided cases on the ground that the deficiency notices herein are rooted in alleged criminal activity, i.e., dealing in narcotics. See also *Helvering v. Mitchell*, 303 U.S. 391 (1938).

Similarly, petitioners' attempt to invoke the Sixth Amendment must also fail; aside from the question whether that amendment provides any constitutional basis for *the payment* of counsel fees, it applies only to criminal prosecutions. *Hannah v. Larche*, 363 U.S. 420, 440 n. 16 (1960); *United States v. Zucker*, 161 U.S. 475, 480–481 (1896); *United States v. Rogers*, 534 F.2d 1134, 1135 (5th Cir. 1976); *Ferguson v. Gathright*, 485 F.2d 504, 506 (4th Cir. 1973); *Grabinger v. Conlisk*, 320 F. Supp. 1213, 1218 (N.D. Ill. 1970).

Moreover, we are, in any event, not prepared to accept petitioners' attempt to invoke what they describe as the doctrine of affirmative Government interference with the lawyer-client relation, citing *Geders v. United States*, 425 U.S. 80 (1976) (ability to consult with counsel), and *Black v. United States*, 385 U.S. 26 (1966) (monitoring of attorney-client conversation), and extend any such doctrine to the financial relationship, as distinguished from the privilege in respect of communications. Nor does petitioners' reliance on the All Writs Act (28 U.S.C. sec. 1651) have any merit. See *Shapiro v. Secretary of State*, an unreported case (see n. 2 *supra*). Whatever thrust that act may have in respect of actions by this Court as a court "established by Act of Congress" must yield to the specific prohibitions contained in the anti-injunction provisions of section 7421(a). Cf. *Enochs v. Williams Packing Co., supra,* in which the Supreme Court indicated that, where it is clear that the Government will under no circumstances prevail, the alleged tax is really not a tax, with the result that the anti-injunction provisions do not apply. (See 370 U.S. at 7.) In *Commissioner v. Shapiro, supra,* the Supreme Court carefully preserved that rationale, merely holding that a taxpayer is entitled to an opportunity to show

that a jeopardy assessment is without any basis in fact. (See 424 U.S. at 629.)

In light of the foregoing, we conclude that we have no alternative but to deny petitioners' motion. We think that it is also appropriate to observe that whatever vitality our comment in *Human Engineering Institute v. Commissioner*, 61 T.C. at 67–68, regarding the possibility of "some action by the trial judge" in situations of this kind, may have had at the time it was made has been sapped to the point of nonexistence by subsequent judicial and legislative developments.

*An appropriate order will be issued.*