ST. LOUIS UNION TRUST CO., a corporation, as Escrow Agent under Escrow Agreement dated July 24, 1970, between Andrew L. Stone, United States of America and St. Louis Union Trust Co.

Andrew L. Stone, Appellant,

v.

UNITED STATES of America, acting by and through the Assistant Attorney General in charge of the Civil Division of the United States Department of Justice, R. C. Voskuil, District Director of Internal Revenue, and James M. Sanders, Revenue Officer, both of St. Louis, Missouri, for the Secretary of Treasury, Barbara Allen Babcock, Appellees.

No. 79–1319.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 6, 1979.

Decided March 11, 1980.

Michael I. Saltzman, New York City, for appellant; Gerald F. Hempstead, Susman, Stern, Heifetz, Lurie, Sheehan, Popkin & Shervitz, Clayton, Mo., on brief.

Michael J. Roach, Tax Division, Appellate Section, Dept. of Justice, Washington, D. C., for appellee; M. Carr Ferguson, Asst. Atty. Gen., Gilber E. Andrews, Crombie J. D. Garrett, Attys., Washington, D. C., Robert D. Kingsland, U. S. Atty., St. Louis, Mo., on brief.

Before LAY, Chief Judge,* and BRIGHT and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

This is an interpleader action commenced by St. Louis Union Trust Company (the Trust Company) for declaratory and other relief as a consequence of conflicting claims made by the Internal Revenue Service (IRS) and Andrew L. Stone to funds the Trust Company received under an escrow agreement (the Escrow Agreement) to which the Civil Division of the United States Department of Justice (the Civil Division), Stone and the Trust Company were parties. Stone appeals from a district court[1] order granting summary judgment in favor of the United States and requiring the Trust Company to pay the accumulated income as well as all future income from the funds to the IRS. We affirm.

Beginning in about 1963, Stone and Francis N. Rosenblum, through their controlled corporation, Chromcraft Corporation and its successor, Alsco, Inc., perpetrated a multimillion dollar fraud on the United States in connection with certain contracts to supply rocket launchers to the Department of the Navy. In 1968, Stone was convicted on a plea of guilty to criminal charges stemming from his involvement in this fraud. In 1969, the Civil Division brought two separate civil actions arising out of the rocket launcher fraud,[2] one in the United States District Court for the District of Columbia and the other in the Eastern District of Missouri against Stone and Harvard Industries, the corporate successor to Alsco, Inc., alleging violations of the False Claims Act, 31 U.S.C. §§ 231–235, and the Anti-Kickback Act, 41 U.S.C. §§ 51–54. In these actions the United States claimed single damages of over $6,000,000 and double that amount for violation of the False Claims Act.

To ensure payment of any judgment it might ultimately obtain against Stone in the Missouri action, in about February, 1970, the Civil Division, through its attorney Lawrence Lippe, and Stone's attorneys engaged in negotiations on an agreement in lieu of attachment of Stone's property. On July 24, 1970, the Escrow Agreement was entered into by Stone, the Civil Division and the Trust Company. Pursuant to the Escrow Agreement, Stone deposited $2,500,000 par value of short-term bonds and United States Treasury Bills and 21,600 shares of the stock of Concord Control, Inc., representing 100 percent of the outstanding stock of that company, into an escrow account at the Trust Company. Pending resolution of the civil action, the Trust

---

* The Honorable Donald P. Lay became Chief Judge of the Eighth Circuit on January 1, 1980.

1. The Honorable James H. Meredith, United States District Judge for the Eastern District of Missouri.

2. *See In re Alsco-Harvard Fraud Litigation*, 325 F.Supp. 315 (Jud.Pan.Mult.Lit.1971) and 328 F.Supp. 1405 (Jud.Pan.Mult.Lit.1971).

Company agreed to hold the escrowed securities (the Principal) and to reinvest any proceeds collected. The Trust Company further agreed that it would deposit any dividends and interest (the Income) received on the Principal in Stone's account at the First National Bank in St. Louis.

Stone retained approximately $1,500,000 in property. As to the property not transferred to the escrow account and the Income, Stone was prohibited from making a "sale, transfer or any other disposition," with two exceptions. First, Stone was permitted to dispose of property for "reasonable living expenses" to maintain his standard of living with only the following limitations: he could spend no more than $100,-000 per year for legal fees, and he was not permitted to make a gift or charitable contribution in excess of $25,000 to any single person or charity in any calendar year without giving prior notice and securing the consent of the Civil Division. Second, although Stone was permitted to sell, transfer or dispose of his property "for full and valuable consideration," he had to give prior written notice to the Civil Division and secure its prior consent. Stone was required to permit representatives of the Civil Division to inspect books, records and other documents that related to the unescrowed assets "at reasonable periods from time to time, as they may desire."

With respect to the Civil Division the Escrow Agreement provided:

> 7. The United States agrees that, so long as Stone shall not be in default under any of his agreements hereunder, the Civil Division of the United States Department of Justice will not institute attachment proceedings against the property and assets of Stone, and shall use its best internal efforts to dissuade any other agency of the United States from proceeding by way of attachment or other lien against the property and assets of Stone.

On February 7, 1972, after some newspaper criticisms of the Escrow Agreement, the IRS made assessments on the ground that the ultimate collection of tax was in jeopardy. On February 8, 1972, the IRS filed a notice of lien reflecting unpaid assessments of income taxes due from Stone for the years 1963 through 1967 in the amount of $7,108,861.73 and served a notice of levy on the Trust Company. The revenue officer who served this notice of levy did not demand immediate payment of either the Principal or the Income but instead instructed the Trust Company to retain the Principal and to withhold any further payments of Income to Stone. Since then, the Trust Company has accumulated the Income in a separate account.

In August of 1974, Stone filed a complaint against the IRS, in the United States District Court for the Southern District of New York (the New York Action), seeking to enjoin collection from him under the jeopardy assessment. During the pendency of the New York Action, the IRS made a second levy in the amount of $10,601,-053.91 [3] against the Principal and Income. On July 30, 1975, a notice of levy was served on the Trust Company, and again oral instructions were given for the Trust Company to continue to hold the Principal and Income. On December 2, 1975, the New York Action was dismissed on the ground that, by virtue of the Anti-Injunction Act, 26 U.S.C. § 7421, the district court lacked subject matter jurisdiction to enjoin the IRS from enforcing a jeopardy assessment. *Stone v. United States*, 405 F.Supp. 642 (S.D.N.Y.1975), *aff'd without opinion*, 538 F.2d 314 (2d Cir.), *cert. denied*, 429 U.S. 921, 97 S.Ct. 317, 50 L.Ed.2d 288 (1976).

On March 9, 1976, the IRS served a third notice of levy in the amount of $11,535,-357.40,[4] seizing the Principal and Income held by the Trust Company. A final demand was served on March 11, 1976. At this point, the Trust Company contacted

---

**3.** Unpaid balance of $6,859,159.36 plus $3,741,-894.55 of penalties and interest.

**4.** Unpaid balance of $6,948,633.05 plus $4,586,-724.35 of penalties and interest.

Stone; and, on March 12, 1976, Stone's attorney demanded by telegram that the Trust Company refuse to honor the levy and threatened legal action against the Trust Company if any funds were turned over to the IRS.

Accordingly, on March 15, 1976, the Trust Company instituted this interpleader action in the Eastern District of Missouri, naming Stone and the United States (as represented by the Assistant Attorney General of the Civil Division, the District Director of the IRS, and the Revenue Officer who served the notice of levy). Before any answer or other pleading had been filed, the IRS released the Principal from the levy on April 22, 1976. In his answer, Stone contended that he was entitled to the Income on the basis of the Escrow Agreement. The United States moved to dismiss the interpleader action and Stone's cross-claim for breach of contract. On March 17, 1977, the district court granted the motion on the ground that it lacked subject matter jurisdiction because there was neither minimal diversity under the federal interpleader statute, 28 U.S.C. § 1335, nor complete diversity or a federal question under Rule 22, Fed.R. Civ.P. *St. Louis Union Trust Co. v. Stone*, 428 F.Supp. 988 (E.D.Mo.1977).

One month after that decision, by letter dated March 31, 1977, the IRS notified Stone that he and his wife owed additional income tax for the years 1973–75, which was due in substantial part as a result of the inclusion in the Stones' taxable income of the Income held by the Trust Company. They have filed a petition in the United States Tax Court contesting the deficiency, but no decision has yet been rendered.

Stone appealed the dismissal of the interpleader action, and this court reversed and remanded, holding that the district court did have jurisdiction under the interpleader statute. *St. Louis Union Trust Co. v. Stone*, 570 F.2d 833 (8th Cir. 1978). On remand of the interpleader action, Stone repeatedly attempted to depose Lawrence Lippe, the attorney who represented the Civil Division in the negotiation and preparation of the Escrow Agreement, concerning the parties' intentions. The Civil Division opposed discovery and finally filed a Rule 56(a) motion for summary judgment against Stone. Stone requested relief under Rule 56(f), Fed.R.Civ.P., including a continuance of the motion for summary judgment to permit discovery. Stone's request notwithstanding, the district court granted the motion for summary judgment. *St. Louis Union Trust Co. v. Stone*, 468 F.Supp. 941 (E.D.Mo.1979).

Here on appeal, Stone urges that summary judgment was improper both because the court below failed to grant a continuance under Rule 56(f) and because the different interpretations of the Escrow Agreement precluded a finding that movant was entitled to judgment as a matter of law. Specifically, Stone had wanted to show that it was his understanding and the mutual intention of the parties that no other governmental agency be able to attach either the Principal or the Income and that the "property" which the Civil Division was to use its best efforts to prevent another agency from attaching was the unescrowed property which Stone retained.

The Civil Division, however, says that the district court—and by extension this court—are precluded by the doctrine of collateral estoppel from even considering the interpretation of the Escrow Agreement.[5] The Civil Division bases this contention on the following language from the New York Action:

> The tax deficiency assessment is entirely independent of the government's

---

[5] Further, the Civil Division claims that collateral estoppel was the basis for the district court's grant of summary judgment because, referring to the New York Action, it stated: "The Court considered and rejected Stone's claim that the escrow agreement barred an I.R.S. lien and levy on the trust or income." *St. Louis Union Trust Co. v. Stone, supra*, 468 F.Supp. at 942. Clearly, however, this statement is not the district court's holding but is a part of the prefatory summary of facts and procedure.

claims in the civil actions against Stone, wherein the government seeks to recover in excess of $6,000,000. The covenant in the escrow agreement related solely to that action and was entered into by Stone to avoid attachment of his assets and property in that action. While the agreement provides that the dividend income of the escrowed [properties] is to be credited to plaintiff Andrew L. Stone and that the Civil Division of the United States Department of Justice will not institute attachment proceedings against his property and assets and will use its best efforts to dissuade any other agency of the United States from proceeding by way of attachment or other lien against his property, this, of course, did not immunize Stone from tax liability or foreclose the Internal Revenue Service from taking appropriate steps to assess a deficiency and to make a jeopardy assessment to reach his assets, including the income from the escrowed securities. The deficiency tax claims and the jeopardy remedies available to the Internal Revenue Service were entirely separate from the claims and remedies which the Justice Department was asserting under the False Claims and Anti-Kickback Acts.

*Stone v. United States, supra,* 405 F.Supp. at 647–48.

 This is not an appropriate case for collateral estoppel, or issue preclusion. We note initially that there is no claim preclusion here, as these are not suits on the same cause of action. The New York Action was an injunction and breach of contract action by Stone against the IRS, while this is an interpleader action brought by the Trust Company against Stone and the IRS. Because they are different causes of action, preclusion applies only to those matters previously at issue and directly adjudicated.

James & Hazard, *Civil Procedure* §§ 11.3, 11.16–11.19 (2d ed. 1977). At a glance, the above-quoted language from the New York Action appears to interpret the Escrow Agreement. But in fact the only issue adjudicated there was the propriety of the jeopardy assessment by the IRS, and the court was not required to interpret the Escrow Agreement for the purpose of resolving that issue. The court looked at the Escrow Agreement for the limited purpose of determining whether the jeopardy assessment was imposed arbitrarily and capriciously and not to collect taxes due. The above-quoted language was relevant to the court's decision that, so long as there was a substantial foundation to support the claim for additional taxes, the IRS's motive in making the jeopardy assessment was not grounds for an injunction. The court held that it lacked jurisdiction to enjoin the IRS from enforcing a jeopardy assessment because of the specific prohibition contained in the Anti-Injunction Act, 26 U.S.C. § 7421(a), which manifests a strong congressional policy against judicial interference, then dismissed the injunction action without prejudice to Stone's breach of contract action. The New York action did not determine whether, having made a jeopardy assessment, the IRS could actually collect from a particular source of property. The rationale for applying res judicata narrowly where the causes of action are different is to prevent just such a situation where language taken out of context might appear to resolve a matter that was not at issue or adjudicated. The district court was not precluded by the doctrine of collateral estoppel from interpreting the Escrow Agreement.

We continue then with Stone's claims that summary judgment was improper because the court denied Rule 56(f)[6] relief

6.

RULE 56.
SUMMARY JUDGMENT

. . . . .

(f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for

reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or

**1300**

and because there was an unresolved issue of law. Both these claims hinge on his desire to prove that the Escrow Agreement is ambiguous and the IRS interpretation does not comport with the intention of the parties. In short, Stone wants to introduce parol evidence.

■ Where a written contract is ambiguous or obscure, parol evidence is admissible to show the intention of the parties. *Harrison Sheet Steel Co. v. Morgan*, 268 F.2d 538, 542 (8th Cir. 1959). Parol evidence is not admissible, however, for the purpose of showing that the parties intended to make an agreement which is inconsistent with the unambiguous words of their written contract. *Sullivan v. United States*, 363 F.2d 724, 727 (8th Cir. 1966), *cert. denied*, 387 U.S. 905, 87 S.Ct. 1683, 18 L.Ed.2d 622, *reh. denied*, 388 U.S. 924, 87 S.Ct. 2104, 18 L.Ed.2d 1378 (1967). Applicability of the parol evidence rule is a question of law to be determined by the court upon examination of the written contract. Where the court holds that the written agreement is unambiguous so that no evidence is admissible to refute it, no purpose is served by allowing a party to conduct discovery aimed solely at proving the existence of an alleged parol agreement. *See Sullivan v. United States, supra*, 363 F.2d 724.

■ Paragraph 7 of the Escrow Agreement states in relevant part: ". . . the Civil Division of the United States Depart-

ment of Justice will not institute attachment proceedings against the property and assets of Stone, and shall use its best internal efforts to dissuade any other agency of the United States from proceeding by way of attachment . . .." On its face this clause shows that the parties carefully distinguished between a binding commitment that the Civil Division would refrain from attachment proceedings against Stone's property and a "best efforts" endeavor with respect to potential attachment proceedings by other agencies.[7] The district court concluded as a matter of law that, because the Escrow Agreement was unambiguous, the parol evidence rule precluded any evidence concerning the parties' intent to reach an agreement inconsistent with the written contract. Once the district court had concluded that no immunity from federal tax levies had been granted to Stone, no purpose would have been served in allowing Stone's discovery concerning an alleged parol agreement. Therefore, the case was ripe for summary judgment on the issue of contractual immunity from attachment, and the court properly denied Stone's Rule 56(f) request for a continuance.

Stone also raises several issues concerning the propriety of the tax levies in 1972, 1975 and 1976. His initial line of attack is that, under the terms of the Escrow Agreement, he did not have any "property or rights to property" for purposes of a tax lien and levy[8] because the Principal and Income were in the custody of the court.

■ In any case involving a federal tax lien, the question to be determined is

---

discovery to be had or may make such other order as is just.
See p. 1298 *supra*.

7. A Civil Division agreement concerning the right of the government to collect taxes by levy would have been unenforceable in any event. Authority for the Internal Revenue laws is conferred on the Secretary of the Treasury, 26 U.S.C. § 7801(a); and, to the extent litigating authority has been vested in the Attorney General, it has been delegated to the Tax Division, not the Civil Division,. 26 U.S.C. § 7801(c). "An officer or agency of the United States to whom no administrative authority has been delegated cannot estop the United States even by an affirmative undertaking to waive or sur-

render a public right." *United States v. Stewart*, 311 U.S. 60, 70, 61 S.Ct. 102, 108, 85 L.Ed. 40, *reh. denied*, 311 U.S. 729, 61 S.Ct. 390, 85 L.Ed. 475 (1940). *See* Lynn and Gerson, *Quasi-Estoppel and Abuse of Discretion as Applied Against the United States in Federal Tax Controversies*, 19 Tax L.Rev. 487, 493 (1963–64). Therefore, even if the Civil Division had entered into such an agreement, it would have been acting outside its delegated authority and the agreement would be void.

8. SEC. 6332 SURRENDER OF PROPERTY SUBJECT TO LEVY
(a) *Requirement*—Except as otherwise provided . . . any person in possession

whether and to what extent the taxpayer had "property or rights to property" to which the tax lien could attach. *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960), *on remand*, 10 N.Y.2d 271, 219 N.Y.S.2d 254, 176 N.E.2d 826 (1961). The IRS acquires by its lien and levy no greater right to property than the taxpayer himself has at the time the tax lien arises. *United States v. Durham Lumber Co.*, 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1958). Property does not belong to a taxpayer and thus is not subject to lien and levy if it has been transferred before the tax assessment. *See, e. g., Wagner v. United States*, 573 F.2d 447 (7th Cir. 1978); *Sisk v. United States*, 61–1 USTC [CCH] ¶ 9476 (N.D.Okl.1961). If a taxpayer only has a right to property after the satisfaction of prior claims, only the residue constitutes "property" subject to lien and levy. *United States v. Durham Lumber Co.*, *supra*, 363 U.S. at 525–26, 80 S.Ct. at 1283–84.

 Stone asserts that he did not possess "property or rights to property" in the Principal or Income because the Escrow Agreement was in the nature of a prior attachment which precluded a tax levy; and, therefore, the Trust Company was not required to surrender the Income.[9] Assuming without deciding that the Escrow Agreement was a prior attachment, the simple fact is that it "attached" only the Principal.[10] The Escrow Agreement provided that the Income was to be payable to Stone and was expressly made available for the payment of his living expenses, including attorney's fees. It is true that Stone agreed to give written notice to the Civil Division before making certain kinds of transfers of his assets (other than living expenses and attorney's fees). By requiring Stone to give the Civil Division prior notice of transfers "except . . . for full or valuable consideration" and charitable contributions in excess of $25,000 the Escrow Agreement afforded the Civil Division an opportunity to prevent Stone from concealing or wasting his assets. Neither of these restrictions[11] is inconsistent, however, with Stone's right to receive and enjoy the Income. Stone had "property or rights to property" in the Income. The Income had not been transferred to either

---

of . . . property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary or his delegate, surrender such property or rights . . . to the Secretary or his delegate, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.
26 U.S.C. § 6332(a).

**9.** For the years 1972 through 1975, the Income varied from $123,776 to $205,356.

**10.** Stone's reliance on *United States v. Swink*, 41 F.Supp. 98 (E.D.Va.1941), for the proposition that the commencement of the contract actions was sufficient to put all his assets in the constructive possession of the court is misplaced. *Swink* involved an assignment for benefit of creditors, where the fund was held by the trustee, as custodian of the court, subject to distribution upon the order of the court. There, the insolvent taxpayer no longer had any rights in the fund. Here, Stone's assets are not in either actual or constructive custody of the court. On the contrary, Stone bargained for and received in the Escrow Agreement property rights in the Income.

**11.** Once a court has determined that under state law the taxpayer has a sufficient interest in property to qualify as a property right, then restrictions or exemptions, whether or not enforceable under state law, cannot defeat the right of the United States to levy upon that property for collection of its taxes. *United States v. Bess*, 357 U.S. 51, 56–57, 78 S.Ct. 1054, 1057–1058, 2 L.Ed.2d 1135 (1958); *United States v. Rye*, 550 F.2d 682 (1st Cir. 1977). Congress explicitly provided that only "the property specifically made exempt by subsection (a)" is exempt from tax levies. 26 U.S.C. § 6334(c). When a taxpayer whose property is the subject of a lien has not timely paid his assessment, all his rights to property held by any third person may be levied in satisfaction of his debt. 26 U.S.C. § 6321. Stone had a "right to property" in the Income; therefore, the minor restrictions placed on its use by the Escrow Agreement cannot defeat the IRS levy. Clearly, the Income did not fall within any of the exemptions of § 6321.

the district court or the Civil Division, nor was it subject to the prior claims of the Civil Division so that only the residue was subject to lien and levy.[12] The IRS acquired the same right to receive and spend the entire amount of the Income that Stone had at the time the tax lien arose.

Stone's final line of attack is on the procedures used in the 1972, 1975 and 1976 tax levies. First, he contends that oral instructions were not valid to seize his property. Neither party cites a case on this point. However, the levy statute defines levy to include the "power of distraint and seizure by any means." 26 U.S.C. § 6331(b). The usual and recognized method of distraint and seizure of property is a notice of levy. Treas.Reg. § 301.6331–1(a). It follows without elaboration that this is a false issue. Stone's property was not seized by the oral instructions. Rather, on each of the three occasions, a written notice of levy was served. The oral instructions, which concerned the treatment of the already-seized property, were within the revenue officer's authority and were binding on the Trust Company.

Second, Stone contends that the 1972 levy was legally ineffective to reach any Income earned after the date the notice of levy was served. The Internal Revenue Code provides that "a levy shall extend only to property possessed and obligations existing at the time thereof." 26 U.S.C. § 6331(b). The unqualified contractual right to receive property is itself a property right subject to seizure by levy, even though the right to payment of the installments has not matured at the time of the levy. *Compare Leuschner v. First Western Bank & Trust Company*, 261 F.2d 705, 708 (9th Cir. 1958) (right to receive income of a trust is subject to tax levy), *with Wagner v. United States*, 573 F.2d 447, 454 (7th Cir. 1978), *following United States v. Long Island Drug Co.*, 115 F.2d 983, 986 (2d Cir. 1940) (future wages not subject to levy because contingent on future performance),

*and* Treas.Reg. § 301.6331–1(a)(1) (1954), *amended by* T.D. 7139 (1971) (levy has no effect on a subsequent bank deposit). In the present case the Trust Company had a fixed contractual obligation to pay the Income to Stone as it was earned. The IRS could and did seize that right to satisfy his unpaid tax liabilities.

Third, Stone contends that the 1976 release of the levy as to the Principal released as well the levy as to the Income. This contention depends upon the Income being inseparable from the underlying Principal. As discussed above, the unqualified contractual right to to receive income is itself a property right. Section 6343(a) authorizes the IRS to release a levy upon all or a part of the property levied upon. 26 U.S.C. § 6343(a). The IRS could release the levy on the Principal and retain the levy against the separate right to receive Income.

Accordingly, we affirm the district court judgment.

---

12. There is no merit in Stone's contention that the Income should be exempt from a federal tax levy because some indeterminate amount of it, along with other assets, might eventually become available to satisfy the judgment in the civil fraud action. Under the Escrow Agreement, Stone was permitted to exhaust the Income on allowable expenses as quickly as he received it.