In re Ronald J. ALLISON and Martha
J. Allison, Debtors.

Ronald J. Allison and Martha
J. Allison, Plaintiffs,

v.

United States of America, Internal Revenue Service and Boilermaker–Blacksmith National Pension Trust, Defendant.

Bankruptcy No. 97–12264–7.
Adversary No. 98/00102.

United States Bankruptcy Court,
D. Montana,
Butte Division.

Dec. 4, 1998.

Karl J. England, Attorney at Law, Missoula, MT, for Boilermaker–Blacksmith National Pension Trust.

Ronald Jesse Allison, Martha J. Allison, Forsyth, MT, Pro se.

Victoria Francis, Assistant U.S. Attorney, Billings, MT, for IRS.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this adversary proceeding, self-declared "non-taxpayers," and Chapter 7 debtors ("Debtors") filed a Complaint attacking the levy by the United States of America, Internal Revenue Service ("IRS") on the Debtors' pension payments. Debtor Ronald J. Allison ("Allison") was employed in the 1980s and was a member of the Boilermaker's Union. During his years of employment, Allison made contributions to the Defendant Boilermaker–Blacksmith National Pension Trust ("Trust"). During this same period, Debtors filed a 1983 tax return entitled "No Jurisdiction", reporting wages and other data as "Object" and noted Allison's social security number was "Revoked – Frdlnt Contract." Other years' filings were the same and unsigned. Thus, no returns by the Debtor were deemed filed for the years 1983, 1984, 1985, 1986, 1988, 1989, 1990, 1991, 1994 and 1995. Pursuant to 26 U.S.C. § 6026(b), the IRS filed substitute returns and calculated the amount of taxes due based on employee forms 1099 and W–2s. Now, in their continuing broadside of the IRS, the Debtors have joined the Trust, seeking a determination that all levies against all property seized and sold by the IRS pursuant to the Internal Revenue Code ("IRC") are illegal, and further seeking an injunction against the IRS to stop all future levies and return of $2,781.99 paid over by the Trust to the IRS by reason of the levies,[1] for the period 1998. Additional levies secured the sum of $9,456.00 from November 1995 through October 1997. Debtors allege that all levies by the IRS, including those on the Trust, were "illegal, improper, void and filled with fatal procedural defects."

The present matter is before the Court on Debtors' request for preliminary injunction, a motion to dismiss or in the alternative, a motion for summary judgment filed by the IRS and a motion to dismiss filed by the Trust. After due notice, a hearing was held on these matters on November 9, 1998. Allison appeared pro se, the IRS was represented by assistant U.S. Attorney Victoria Francis, and the Trust was represented by its Montana counsel, Karl J. England. After the hearing, Debtors were granted an additional twenty days to file a supplemental memorandum, which Debtors filed November 30, 1998, and December 1, 1998. The matter is thus ripe for decision.

---

1. According to the Complaint, ¶ 8, the amount of the monthly benefits is $927.53.

## BACKGROUND

Debtors filed a Chapter 7 bankruptcy petition on August 27, 1997.[2] Schedule "B" includes a list of interest in IRA, Keogh and other pension or profit sharing plans as "Boilermakers Pension Trust, Kansas City, KS (pension)" owned by the Husband [Allison], with current market value as "unknown." Schedule "C," "Property Claimed as Exempt" does not list the Trust.[3] Debtors' amended Schedule "E," "Creditors Holding Unsecured Priority Claims," lists the IRS for tax liability for the years 1983, 1984, 1985, 1986, 1988, 1989, 1990 and 1991 as disputed in the sum of $68,491.78 and the tax liability for 1994–95 as disputed in the sum of $1,312.00. The Chapter 7 Trustee abandoned all interest in the Debtors' property and discharge was entered on December 16, 1997. Throughout the Chapter 7 case, Allison, by motion, continued his assault on the IRS claims, which motions were rejected by Court Order as improper procedure. Debtors made no claim against the Trust and the case was closed as a no-asset case by Final Decree entered January 26, 1998. On July 31, 1998, Debtors filed a Motion to Reopen Chapter 7 Bankruptcy Case to pursue claims against the IRS and the Trust. The case was reopened by Order filed August 3, 1998, and this adversary proceeding was filed September 3, 1998.

The record shows by affidavits of IRS agents, exhibits by the IRS and Debtors and the allegations of the Complaint, that with the exception of one year (1988), the Debtors have never challenged, in the U.S. Tax Court, or any other court, the Notice of Deficiency issued by the IRS for the tax years in question. As to the year 1988, that petition was filed February 5, 1991, and on December 31, 1991, the Tax Court entered an "Order of Dismissal and Decision" finding a deficiency of income tax for the year 1988 in the amount of $619.00. That decision was not appealed and is final. Thus, the amount of all tax assessments was uncontested by Debtors.

In addition, when the IRS sought an Order for Entry of Premises to effect levy pursuant to 26 U.S.C. § 6331 in the United States District Court for the District of Montana, to which Debtors replied through a Motion to Quash Service and on other grounds, the Court on May 23, 1997, held:

> 28 U.S.C. § 2410 allows taxpayers to file actions challenging the procedural aspects of tax liens, but not the merits of the underlying tax assessments. *Arford v. United States*, 934 F.2d 229, 232 (9th Cir.1991). In his brief Allison claims he is only challenging the Internal Revenue Services' "failure to adhere to Congressionally mandated procedures." Thus, the appropriate means by which Mr. Allison can challenge the instant action taken by the IRS is by way of a separate action under 28 U.S.C. § 2410, not by way of motion to quash.

Allison appealed to the Ninth Circuit Court of Appeals, No. 97–35560. The Judgment of the District Court was affirmed on April 2, 1998, with the Court, in Memorandum, noting:

> The District Court properly denied the motions because, Allison, who was not a party to the ex parte writ of entry proceedings, cannot use those proceedings as a forum for airing his assessment and collection grievances with the Internal Revenue Service. (citing cases).

**2.** The "Voluntary Petition" was signed 8/26/97 by the Debtors under penalty of perjury. Debtors' schedules were filed September 12, 1997, dated September 10, 1997, signed by each Debtor, which strikes the penalty clause and states "Signatures involuntary [sic] given under duress and threat of statutory punishment." Such caveat is consistent with Debtors' attitude toward the government.

**3.** Allison argues the pension benefits are exempt under Mont.Code Ann. § 19–2–1004. That Code section governs benefits payable under the Montana Public Employees Retirement System, which has no application to Debtors. As will be seen later in this Order, the claim of exemption under state law of an IRS levy is not enforceable.

Allison further challenged the levy and sale of real and personal property by filing an action against the purchasers of said property in Montana State District Court. That action was dismissed on October 29, 1997. Allison appealed to the Montana Supreme Court on June 9, 1998. That Court, in Cause No. 97–641 (unpublished), affirmed, stating the United States was an indispensable party, but not joined in the quiet title action. Allison's action was based on 28 U.S.C. § 2410, and 26 U.S.C. §§ 7402, 7421 and 7422. The Court held Allison failed to allege the IRS has a mortgage or lien on the property in dispute which did not involve the Trust pension payments. Allison failed to correct the deficiency of the state court action.

In each of the tax years 1983–1991 (excluding 1988), a notice of deficiency was duly sent to Debtors stating they had 90 days to file a petition with the United States Tax Court for a redetermination of the deficiency, and failure to file within the 90 day period would result in a loss of a redetermination. Affidavit of Pat Taylor, with Exhibits. As noted above, Tax Court relief was sought by Debtors for tax year 1988, and denied in favor of the 1988 deficiency. For the tax years 1994 and 1995, assessments were made pursuant to 26 U.S.C. § 6026(b) on August 27, 1996, but no enforcement action has been taken and no Federal tax lien recorded. Taylor affidavit p. 7.

The levy of the Trust funds was a continuing levy effective November 1, 1995. The levy was stayed by the IRS on September 3, 1997, due to the bankruptcy petition and began again on June 1, 1998. Release of the levy was made by the IRS when Debtors' case was reopened.

Summary Judgment under Bankruptcy Rule 7056, which adopts Rule 56, F.R.Civ. P., is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The United States Supreme Court has interpreted this standard to mean that summary judgment is not appropriate if "reasonable minds could differ as to the impact of the evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated differently—

> *Evaluative judgment* between *two rationally possible* conclusions from facts cannot be engaged in on summary judgment. Only where the facts supportive of a summary judgment can be held to have so unambiguously established the actualities of a situation as to leave no basis of substance for dispute as to their reality or as to the conclusion required from them is a summary judgment entitled to be entered. (Emphasis in original).

*Chenette v. Trustees of Iowa College*, 431 F.2d 49, 53 (8th Cir.1970). The Court has considered all of the affidavits with attached exhibits, the Complaint and Debtors' exhibits attached to the memorandum of the Debtors and finds that matter may be disposed of by summary judgment on the facts and as a matter of law.

### JURISDICTION

The only allegation of this Court's jurisdiction on the Complaint is in ¶ 7 that "[t]his action is commenced pursuant to the Internal Revenue Code (U.S.I.R.C.) and the U.S. Bankruptcy Code (11 U.S.C.) and other sections of the federal Codes (United States Code Annotated)." Debtors' Complaint fails, in this instance, to comply with F.R.B.P. 7008(c), which provides that the Complaint "shall contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy judge."

Jurisdiction may attach under § 505 of the Bankruptcy Code. *In re Lipetzky*, 3 Mont. 131, 135–36, 64 B.R. 431, 433–34 (Bankr.Mont.1986) holds:

In reviewing Section 505 and the authorities cited by each party, as well as other decisions, there is no conflict among the decisions regarding the purpose and meaning of Section 505. The determination of a debtor's tax liability is a core proceeding under Section 157 of the Code and this Court thus has jurisdiction to determine the *amount and legality of the tax*, except where such tax has been fixed by final order of an administrative or judicial tribunal, after being reasonably contested by the taxpayer. (Emphasis added). *In re Palm Beach Resort Properties, supra*, [51 B.R. 363]. As stated in *In re Northwest Beverage, Inc., supra*, at 46 B.R. 631, 634–635:

> Section 505 is derived from the Bankruptcy Act sections which allowed the Court to hear and determine questions concerning the amount or legality of unpaid taxes. (Citing authority). Several Act cases have construed the language used in the predecessor Section to Section 505 to mean that:

> '[W]here after a hearing, a quasi-judicial body—determines the amount of tax due, with the right on the part of the taxpayer to a judicial review of the determination, all confirmable with the requirements of due process, such determination, *upon becoming final by operation of law*, is conclusive upon a court of bankruptcy, for mathematical error in the computations of the amount of tax or legal error in its assessment.' (Citing cases).

\* \* \*

Section 505 of the Bankruptcy Code and the predecessor section in the Act were enacted to '... protect[s] the estate from the negligence or indifference of a debtor who has defaulted in tax assessment proceedings ...' 3 COLLIER ON BANKRUPTCY, 505–23 (15th Ed.). In enacting Section 505 Congress was primarily concerned with protecting creditors from the dissipa-

tion of the estate's assets which could result if the creditors were barred by a tax judgment which the Debtor, due to his ailing financial condition, did not contest. (Citing cases).

While the case of *In re Piper Aircraft Corp.*, 171 B.R. 415 (Bankr.S.D.Fla.1994) holds a debtor may challenge the merits of a state tax under § 505 even though the debtor failed to challenge the assessment under applicable state law procedures, the holding of that case does not apply here. First, the Debtors' Complaint does not raise any issue as to merits, i.e., amount of the tax assessments by the IRS. Both the Complaint and the memorandum of Debtors allege 16 levy procedures which Debtors claim the IRS violated in collecting the tax on property other than pension benefits. Second, there is no issue here that the review of the merits of the tax assessments will cause dissipation of the Debtors' assets as the Chapter 7 case is a no-asset case. Third, while the grant of jurisdiction under § 505 makes no reference to time periods as held in *In re Ledgemere Land Corp.*, 135 B.R. 193, 196–97 (Bankr. D.Mass.1991), the statute must be read in light of the federal statutes granting appeal rights of tax assessments to taxpayers. Debtors are now time barred under those federal statutes from seeking review of the amount of the tax assessments. Fourth, over a decade has passed since most of the tax assessments were determined by the IRS. Except for the year 1988, where the Debtors lost on appeal, the Debtors failed to attack each yearly assessment in a timely manner. Not only is the attack now time barred, but the Debtors are guilty of laches by estoppel. A failure to do something which should be done or to claim or perform a right at a prior time with knowledge of that right, as the Debtors had, is laches by estoppel. *Hutchinson v. Kenney*, 27 F.2d 254, 256 (4th Cir.1928). Finally, as in other areas of the law, even though § 505 sets no time frame, it is evident from the point of administration of the bankruptcy estate and

fairness to the taxing authorities, the Trustee and other creditors that any challenge to the merits of the tax assessment must be made in a timely manner. *See, e.g., Molina v. Rison,* 886 F.2d 1124, 1131 (9th Cir.1989).

The Debtors slept on their rights and have now no cause to complain about the validity or amount of each tax assessment. Section 505 is designed only to determine the amount or validity of a tax, not the levy and sale procedures used by the taxing authority to enforce payment of the tax.

Clearly, this Court had no jurisdiction to try the determination of the 1988 tax year assessment since that deficiency has been finally adjudicated pre-petition by the Tax Court. *Hammers v. Internal Revenue Service (In re Hammers),* 988 F.2d 32 (5th Cir.1993).

Jurisdiction over the IRS cannot be claimed under 28 U.S.C. § 2410, which states in relevant part, "the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—to quiet title to ... real or personal property on which the United States has or claims a mortgage or other lien." The entire thrust of Debtors' Complaint and memorandum complains not about the procedure followed by the IRS in levy and attachment of the pension trust funds, but rather about the procedure dealing with the levy and sale of the muffler shop/real property/equipment of that business. By the plain terms of § 2410, the United States must have a lien or mortgage in such property. That property, however, has been sold to bona fide purchasers and the IRS lien no longer exists. Further, as noted in *Arford v. United States,* 934 F.2d at 232, "[t]o the extent that the Arfords are challenging the amount assessed by the IRS under § 6203, 28 U.S.C. § 2410 does not serve as a waiver [of sovereign immunity]."

If this action seeks jurisdiction under 26 U.S.C. § 7426, Ronald Allison is out of court. Section 7426 provides that "any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States ..." Obviously Ronald Allison[4] cannot sue under such section because he is the person "against whom is assessed the tax." *Arford,* 934 F.2d at 232. Thus, no jurisdiction lies under § 7426. If Martha J. Allison is a Plaintiff, the claim for relief under § 7426 as to her is baseless in fact. The record shows Martha Allison was title owner of the real property as the nominee of Ronald Allison. This matter of whether Martha Allison was nominee of Ronald Allison was settled by the Montana Federal District Court in Cause No. 97–8–Blg–JDS where the IRS sought its writ of entry. In that cause, the Revenue Office presented an affidavit (Exhibit "A" to Affidavit of Cindy A. Bouldin) detailing the nominee relationship, namely:

a. A close relationship between Ronald J. and Martha J. Allison as husband and wife.;

b. Ronald Allison exercises dominion, control and possession over this property;

c. Property was acquired in Martha Allison's name after the knowledge of taxes due;

d. Ronald J. Allison's name is listed on the utility bills of this commercial property.

The Federal District Court considered such evidence in issuance of the writ of entry. That matter has been adjudicated after Allison filed the motion to quash and lost on appeal. Thus, the issue is res judicata. Further, under § 7426, as interpreted by *Arford, supra* at 232, Martha has no legally recognized interest in the real property as nominee. Even assuming

---

4. The Complaint is signed only by Ronald J. Allison, designated as "Plaintiff Pro Se."

Martha could establish a right to sue under § 7426, the Plaintiff loses on the established facts in the record.

■ Section 6331(a) provides that if a taxpayer (or non-taxpayer) fails to pay the tax within 10 days after notice and demand, the IRS may collect such tax by levy. The 10 day notices were given for each tax year. Affidavit of IRS agent Bouldin and Exhibit "A." Then 26 U.S.C. § 6331(b) allows seizure of the property. On March 6, 1997, pursuant to statute, the IRS seized both the real and personal property described in the state court action and now also contained in Allison's challenge in this adversary proceeding. The property was sold after notice to each Debtor and posting and advertisement of Notice of Sale. The sale occurred on August 20, 1997, when the City of Forsyth purchased the real property for $7,032,60 subject to a prior mortgage. Allison, in his memorandum filed December 1, 1998, complained the sale should have taken place in Rosebud County, rather than where it in fact took place, namely Yellowstone County. 26 U.S.C. § 6335 provides:

> The time of sale shall not be less than 10 days nor more than 40 days from the time of giving public notice under subsection (b). The place of sale shall be within the county in which the property is seized, except by special order of the Secretary.

The IRS issued a proper "Delegation Order", Form 10434, approving the sale in Yellowstone County as the Notice of Sale provided, thus satisfying § 6335.

■ Debtors' personal assets were sold for $6,350.00 to another buyer. Those matters, still contested by Allison, are finished and complete. Allison had a right to redeem the personal property from sale up to the date of sale, 26 U.S.C. § 6337(a), and redeem the real property 180 days after the sale. 26 U.S.C. § 6337(b)(1). All redemption rights expired by the date of the bankruptcy petition or within 60 days of the petition date. Pursuant to 26 U.S.C. §§ 6338 and 6339(a)(1), the deed of conveyance and certificate of sale, given August 20, 1997, is *prima facie* evidence of the right to make the sale and conclusive evidence of the regular nature of proceedings in the case of the personal property and the facts set forth in the deed of conveyance.

■ Further, as to property sold on tax levy sales based on assessments in the other tax years, those sales are final and complete, leaving no property in the bankruptcy estate to be administered by the Trustee. All of the allegations in the case *sub judice* by the Debtors involving the sale of the muffler shop, the real property on which it is was situated and the personal property of the business are barred from determination under the doctrine of *res judicata* and the fact this Court has no jurisdiction over such property. As noted above, Debtors sought twice, once in Federal District Court and then in state court, to challenge the levy and sale. Debtors lost both times. *In re Siegel v. Fed. Home Loan Mortgage Corp.*, 143 F.3d 525, 528–29 (9th Cir.1998) states the applicable law:

> The "doctrine of res judicata bars a party from bringing a claim if a court of competent jurisdiction has rendered a final judgment on the merits of the claim in a previous action involving the same parties or their privies." *Robertson v. Isomedix, Inc. (In re Intl. Nutronics),* 28 F.3d 965, 969 (9th Cir.1994). Thus, " '[r]es judicata bars all grounds for recovery that *could have been asserted,* whether they were or not, in a prior suit between the same parties on the same cause of action.' " *Id.* (alteration in original) (citation omitted). That applies to matters decided in bankruptcy. *See id.*

Both the Federal and state court decided Debtors' challenge to the levied upon property, and even if the procedure was incorrect, that is not important because Allison had the opportunity to properly raise the issue in the state court quiet title action against the IRS, but did not do so. As *In*

*re Intl. Nutronics, Inc.*, 28 F.3d at 969 states:

> Thus the [anti-trust] claim could have been asserted at the time of the proceeding confirming sale, and this opportunity is sufficient to satisfy that requirement of the doctrine of res judicata.

■■■ Equally important to such property interests, once the bankruptcy court determines such property is not property of the estate under § 541 of the Bankruptcy Code, it lacks jurisdiction to determine issues relating to that property. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 209–210, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), discussing the turnover provision of § 542(a) of the Code states:

> Of course, if a tax levy or seizure transfers to the IRS ownership of the property seized, § 542(a) may not apply. The enforcement provisions of the Internal Revenue Code of 1954, 26 U.S.C. §§ 6321–6326 (1976 ed. and Supp. V), do grant to the Service powers to enforce its tax liens that are greater than those possessed by private secured creditors under state law.

Granting that such enforcement provisions do not transfer ownership of the property to the IRS, the Court nevertheless concluded:

> Ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale. See *Bennett v. Hunter*, 9 Wall. 326, 336, 19 L.Ed. 672 (1869); 26 U.S.C. § 6339(a)(2); *Plumb*, 13 Tax.L.Rev., at 274–275.

462 U.S. at 211, 103 S.Ct. at 2317. Since the business assets have been sold to bona fide purchasers (a sale the debtor attempted to upset in the federal and state court

proceedings, but lost), those assets cannot become property of the estate over which this Court may entertain jurisdiction.

■■■ As to the levy pre-petition on the pension funds, those funds by levy automatically become transferred to the IRS in payment of its lawful tax claim, thus leaving this Court without jurisdiction over such funds. *United States v. Borock (In re Ruggeri Elec. Contracting, Inc.)*, 185 B.R. 750 (Bankr.E.D.Mich.1995) (Bank account seized by levy by IRS pre-petition divested debtor of any identifiable interest in the money). Equally important, it is also the law that only the Chapter 7 trustee, not the debtor, would have any right to the funds if they were subject to recover. 11 U.S.C. § 542. The debtor is simply not the real party in interest to seek the return of any of the seized property if such was possible.

■■■ This Court also lacks jurisdiction to issue an injunction to restrain the assessment on collection of taxes. 26 U.S.C. § 7421(a).[5] The Supreme Court of the United States in *Enochs v. Williams Packing & Navigation Co., Inc.*, 370 U.S. 1, 7–8, 82 S.Ct. 1125, 1129–30, 8 L.Ed.2d 292 (1962), described the application of the Anti–Injunction statute as follows:

> The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue.

> \* \* \*

> Thus, in general, the Act prohibits suits for injunctions barring the collection of federal taxes when the collecting officers

**5.** Section 7421(a) provides:

> Except as provided in sections 6015(d), 6212(a) and (c), 6213(a), 6225(b), 6246(b), 6672(b), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection

of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

The exceptions referred to are not applicable in the pending case.

have made the assessment and claim that it is valid. *Snyder v. Marks*, 109 U.S. 189, 194, 3 S.Ct. 157, 160, 27 L.Ed. 901.

*Arford v. United States*, 934 F.2d at 231, fn. 3 holds:

> The Anti–Injunction Act, 26 U.S.C. § 7421, is a further bar to suit against the government in federal court on taxpayers' claims that they do *not* owe taxes: the government cannot be enjoined from the collection of taxes unless the taxpayer timely proceeds through the administrative process in tax court. *See Elias v. Connett*, 908 F.2d 521, 523 (9th Cir.1990) (discussing Anti–Injunction Act and its narrow exceptions).

Thus, Debtors' claim for relief in the form of an injunction is without basis in law as this Court is without jurisdiction. *Id.*

Moreover, as noted above, Debtors had the opportunity and right to challenge the assessments in the Tax Court by petition filed within 90 days of the Notice. Except for the tax year 1988, Debtors failed to avail themselves of that statutory right. But that may not end their challenge. Debtors had another avenue to attack the merits of each assessment. The taxpayers could have paid the tax and filed suit for refund. 26 U.S.C. § 6511(a). If no return was filed, the claim must be filed within two years from the date the tax was paid. *Id.* For the tax years on which the IRS now seeks collection by levy, that 2 year period has passed and the assessment is final and binding on Debtors. As noted above, the merits of any refund suit cannot now be resurrected by § 505 of the Bankruptcy Code.

What debtors' rights urged in the Complaint are thus left for this Court's jurisdiction? As I view the entire record, the only issue remaining is whether the IRS tax lien arising pre-petition can attach to the post-petition pension payments in view of the discharge entered by the Court in the Debtors' Chapter 7 bankruptcy proceeding. On that issue, this Court has jurisdiction under 28 U.S.C. § 1334 and it is a core proceeding under section 28 U.S.C. § 157(b)(2)(I) and (K).[6]

## FEDERAL TAX LIEN LEVY AGAINST PENSION PAYMENTS

■ As noted above, 26 U.S.C. § 6321 establishes a federal tax lien when a taxpayer, such as Debtors, refuses to pay such tax after demand. Section 6321 attaches to "all property and rights to property, whether real or personal" belonging to the debtor. This statutory grant is "broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have . . . 'Stronger language could hardly have been selected to reveal a purpose to assure collection of taxes.'" *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719–20, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985) (relying on *Glass City Bank of Jeanette, Pa. v. United States*, 326 U.S. 265, 267, 66 S.Ct. 108, 90 L.Ed. 56 (1945)).

■ The tax lien under section 6321 is created at the time the assessment is made and continues until the liability is satisfied or becomes unenforceable due to the passage of time. 26 U.S.C. § 6322. *Nat'l Bank*, 472 U.S. at 719, 105 S.Ct. 2919. It is therefore axiomatic that the tax lien attaches to the taxpayer's property and rights thereon as of the moment of assessment and, with one exception hereinafter discussed, attaches to any property coming into the taxpayer's possession after assessment. *See, Tillery v. United States (In re Tillery)*, 204 B.R. 575, 576 (Bankr. E.D.Okl.1996). The lien does not attach to property or rights to property acquired by the debtor after a petition in bankruptcy is

---

**6.** Sections 157(b)(2)(I) and (K) provide that core proceedings include:

(I) determinations as to the dischargeability of particular debts;

\* \* \*

(K) determinations of the validity, extent, or priority of liens.

filed where the tax liability is discharged personally against the debtor. *United States v. Sanabria*, 424 F.2d 1121 (7th Cir.1970); *Leavell v. United States (In re Leavell)*, 124 B.R. 535, 540 (Bankr.S.D.Ill. 1991). Despite discharge of personal liability, a valid IRS tax lien passes through the Chapter 7 estate unaffected as to the Debtor's property rights which were attached prior to the filing of the bankruptcy petition. *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *Isom v. United States (In re Isom)*, 901 F.2d 744 (9th Cir.1990); *Braddock v. United States (In re Braddock)*, 149 B.R. 636, 637 (Bankr.Mont.1992). *Isom* holds:

> The liability for the amount assessed remains legally enforceable even where the underlying tax debt is discharged in the bankruptcy proceeding. A discharge in bankruptcy prevents the I.R.S. from taking any action to collect the debt as a personal liability of the debtor. The debtors concede, however, that their property remains liable for a debt secured by a valid lien, including a tax lien. (Citing cases).

*Isom*, at 745. This issue really becomes what levy rights existed pre-petition which allow the tax lien to be enforced despite discharge. That issue is not really difficult in the case *sub judice* for two reasons. First, the Debtors' discharge did not discharge the Debtors' personal liability for the unpaid income taxes. As described above, it is undisputed that Debtors failed to file proper tax returns for the years in question. Under § 523(a)(1)(C) of the Code, an Order of discharge does not discharge an individual debtor from any debt—

(1) for a tax or a custom duty—

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

Debtors purposely and willfully tried to evade taxes legally due by failing to file any proper return since 1977, and when he did file a document, there were no signa-

tures or earnings information on the returns, only the word "Object." *United States v. Hoffman*, 643 F.Supp. 346, 348 (E.D.Wis.1986); *In re Schmitt v. United States (In re Schmitt)*, 140 B.R. 571, 572 (Bankr.W.D.Okl.1992); *Slater v. United States (In re Slater)*, 96 B.R. 867, 868 (Bankr.C.D.Ill.1989). All these cases stand for the legal principle that "protest" tax returns, with meritless objection, unsigned, are not lawful tax returns, and thus are nondischargeable debts under § 523(a)(1)(C). Thus, Debtors' personal liability for the taxes due under the assessments made by the IRS still exists and allows the IRS to levy the Debtors' post-petition property or rights to property.

But even if it could be argued by some fathom of Allison's warped and crabbed mind that the personal liability for the taxes were discharged, Allison still loses the argument. It is universally held without exception that state law controls the nature of the debtor's property interests and rights. *Nat'l Bank*, 472 U.S. at 722, 105 S.Ct. 2919, *citing United States v. Bess*, 357 U.S. 51, 55, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958) (The tax lien created by § 6321 "creates no property rights, but merely attaches consequences, federally defined, to rights created under state law."). Once, however, the state law rights have been determined and an interest in property rights has been found, state law is thus satisfied and now federal law determines the consequences. *Nat'l Bank*, 472 U.S. at 722, 105 S.Ct. 2919; *Raihl v. United States (In re Raihl)*, 152 B.R. 615, 617 (9th Cir. BAP 1993).

In Montana, Mont.Code Ann. § 1–1–205 defines terms relating to property as including "(1) 'Personal property' means money, goods, chattels, things in action and evidence of debt." Indeed, that the pension funds are property of the debtor under state law is conceded by the allegations of ¶¶ 17 and 32 of the Complaint which state by admission that Plaintiffs' property both real and personal include Ronald J. Allison's pension fund payments

and seizure by the IRS of the pension fund proceeds constitutes and unlawful interference with and depreciation of "Plaintiffs' right and possessory interests in that property." Moreover, as held in *Nat'l Bank*, 472 U.S. at 725, 105 S.Ct. 2919, the "unqualified contractual right to receive property is itself a property right", even though the right to payment has not yet matured. I conclude that by Montana law, Allison has a property right, matured pre-petition, to receipt of the pension benefits.

■■■■■ Having so found that Allison has a vested interest in the pension funds and the right to receive future post-petition payments, that ends the state law inquiry, and the Court now must turn its attention to the federal enforcement right of the IRS. It is firmly established in uniform case law that a "federal tax lien attached to a then existing right to receive property in the future." *In re Wesche*, 193 B.R. 76, 77 (Bankr.M.D.Fla.1996); *Wessel v. United States (In re Wessel)*, 161 B.R. 155, 159 (Bankr.D.S.C.1993); *In re Blackerby*, 208 B.R. 136, 140 (Bankr.E.D.Pa. 1997). For as soon as enforceable property rights arise under state law, the tax lien attaches. William T. Plumb, Jr. Federal Tax Liens, § 3(a) at 22 (3rd ed.1981). For example, in *Fried v. New York Life Ins. Co.*, 241 F.2d 504 (2nd Cir.1957) the IRS lien attached to monthly disability payments under a policy granting the taxpayer the contractual right to such monthly payments. *See also, In re Tillery*, 204 B.R. 575, for same holding. In *Nat'l Bank*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565, the Supreme Court found as a matter of federal law that a state law right to withdraw money from a joint bank account is subject to IRS levy. The Eighth Circuit held in *St. Louis Union Trust Co. v. United States*, 617 F.2d 1293, 1301–02 (8th Cir.1980) that the taxpayers right to receive escrow payments was subject to tax lien attachment, since it was an unqualified contractual right to receive property which is subject to seizure. In *In re Raihl*, 152 B.R. 615, the Ninth Circuit BAP found the

debtor's fully vested interest in pension plan and 401(k) savings plan, which were subject to restriction on alienability, subject to tax lien seizure and the inalienability of the pension interest does not destroy their character as property or immunize such interest from attachment of a federal tax lien, *citing United States v. Rye*, 550 F.2d 682, 685 (1st Cir.1977) and *Leuschner v. First Western Bank and Trust Co.*, 261 F.2d 705, 708 (9th Cir.1958). Indeed, the right to receive periodic payments, such as monthly benefits, is the right to which the tax lien applies. *Fried v. New York Life Ins. Co.*, 241 F.2d at 505.

■■■■ Yet Debtors claim the tax lien attachment cannot be made against exempt property. Debtors cite no Montana statutes or applicable federal statute giving them an exemption in pension benefits. The erroneous assertion that the Montana Public Employee Retirement System Exemption applies is just that—erroneous. Even assuming there is such an exemption statute, *In re Perkins*, 134 B.R. 408 (Bankr.E.D.Cal.1991) properly holds that a federal tax lien enjoys special legal status and grants the IRS the legal right to attach exempt pension benefits. *See, e.g., United States v. Barbier*, 896 F.2d 377, 378 (9th Cir.1990) and *Leuschner v. First Western Bank and Trust Co.*, 261 F.2d 705. Indeed, even though Congress has expressly granted exemption rights to a person under the Bankruptcy Code in section 522(a)(10)(E)(iii) (Montana has opted out of such section under Mont.Code Ann. § 31–2–106), such exemption does not affect a federal tax lien. 11 U.S.C. § 522(c)(2)(B).

■■■■ Thus, when the debtor has an unqualified right to receive certain pension payments, as in this case, prior to the date of the bankruptcy petition, the right to receive the future payments constitutes property or a right to payment subject to attachment under § 6321.

■■■■ One further matter exists as to the motion to dismiss filed by the Defen-

dant Boilermaker–Blacksmith National Pension Trust. This Defendant should never have been sued in this action by the Debtor Allison. The Trust honored the levy of attachment as it had the legal duty to do so. As a result, the Trust has an absolute defense to this spurious action under 26 U.S.C. § 6332(d) and (e). Under subsection (d), a party holding property of a delinquent taxpayer *must* comply with the levy. Upon doing so, subsection (e) grants that complying party immunity from any liability to the taxpayer. Subsection (e) states:

> Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)) shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

██ Section 6332(e) provides absolute immunity from a claim by a delinquent taxpayer against a person for complying with a tax levy against property or a property interest of the delinquent taxpayer. *Liebig v. Kelley–Allee,* 923 F.Supp. 778, 780–81 (E.D.N.C.1996); *Pawlowske v. Chrysler Corp.,* 623 F.Supp. 569, 570 (N.D.Ill.1985), *aff'd* 799 F.2d 753 (7th Cir. 1986); *Edgerton v. Spinola,* 623 F.Supp. 169, 170–71 (D.Conn.1985); *McKeown v. LTV Steel Co.,* 117 F.R.D. 139, 142 (N.D.Ind.1987). A union benefits trust fund is a "person" who is insulated from liability to a delinquent taxpayer under 26 U.S.C. § 6332 for complying with a tax levy of the Internal Revenue Service. *Carman v. Parsons,* 789 F.2d 1532 (11th Cir.1986) (*citing* 26 U.S.C. § 7701(a)(1)).

In sum, the Complaint fails to state a claim for relief against the Defendant Trust and the Defendant's motion to dismiss under F.R.B.P. 7012, incorporating Rule 12(b)(6), F.R.Civ.P., must be granted.

## CONCLUSION

Allison writes and argues (memo p. 9): Mr. Allison cherishes his freedom, rights and protections afforded him by the original organic Constitution of the United States of America.

Allison complains bitterly that the Sixteen Amendments and its progeny, the IRC and IRS, cannot make him a taxpayer because he is a non taxpayer outside the jurisdiction and authority of the United States Federal Government, which he contends consists only of the District of Columbia, federal reservations, military establishments and other federal enclaves. Allison clearly and intentionally misses the constitutional mark. As decided in *William E. Peck & Co., Inc., v. Lowe,* 247 U.S. 165, 172–73, 38 S.Ct. 432, 62 L.Ed. 1049 (1918), the Sixteenth Amendment "does not extend the taxing power to new and excepted subjects, but merely removes all occasion, which otherwise might exist, for a apportionment among the states of taxes laid on income, whether it be derived from one source or another." (citing cases). As an excuse to avoid taxes by claiming citizenry of the United States and Montana, but not of the federal government, Allison's anarchist position becomes self-evident. Allison states he cherishes the freedoms of the Constitution. If that be the fact, then Allison can take no refuge in the Bill of Rights which are embodied in the first Ten Amendments to the original Constitution. Allison, to follow his theory, would not have religious or political freedom (Amendment 1), no right to bear arms (Amendment 2), no protection against unreasonable searches and seizures[7] (Amendment 4), no right to due process of

---

7. The IRS afforded Allison that right when it sought court approval for entry of his premises under 26 U.S.C. § 6331. Under Allison's theory, the IRS could have walked into his private domain without any judicial order.

law (Amendment 5), no rights in criminal prosecution to a fair and speedy trial (Amendment 6), no right to a trial by jury (Amendment 7), and no right against excessive bail (Amendment 8). Yet it is obvious from his excessive and prolific rhetoric that he wants and demands enjoyment of all such freedom, rights and protections of the Bill of Rights. Cutting to the quick, the simple fact is that Allison simply does not want to pay his share of taxes necessary for all citizens of this great country to enjoy such freedoms and privileges. Allison has appeared before many courts and agencies with his protesting and spurious arguments. All have seen through his facade. Accordingly his re-hash of worthless positions simply to avoid taxes will find no solace from this Court.

In view of all written above, this Court concludes it has no jurisdiction to issue any injunction by reason of 26 U.S.C. § 7421(a), it has no jurisdiction to determine the merits of the tax assessments under 11 U.S.C. § 505 and 26 U.S.C. §§ 2410 and 7426, due to lack of pleading such issue, laches and res judicata, and it has no jurisdiction to any claim for relief against property which was lawfully seized and sold pre-petition, including the muffler shop, its real property and equipment, as such property is not property of the bankruptcy estate under 11 U.S.C. § 541 and therefore, such property is also not subject to turnover under 11 U.S.C. § 542. This Court does have jurisdiction to decide the effect of the Debtors' discharge and concludes the discharge does not discharge Debtors of personal liability for payment of the federal taxes by reason of § 523(a)(1)(C) and that the federal tax liens are valid and effective against all past and future pension trust payments under 26 U.S.C. § 6321. Finally, this Court has jurisdiction to determine that the claim for relief against the Trust is barred by 26 U.S.C. § 6332(e). By reason of these conclusions, based on the findings of fact above, the Court will forthwith grant the motion for summary judgment by the IRS and the motion to dismiss of the Trust.

IT IS ORDERED the Motion for Summary Judgment filed by the Defendant United States of America, Internal Revenue Service and the Motion to Dismiss filed by Defendant Boilermaker–Blacksmith National Pension Trust are granted; and the Complaint is dismissed with prejudice with costs to each Defendant.